**Marion Clayborn DAVISON, Jr.,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20186.**

United States Court of Appeals
Ninth Circuit.

Nov. 14, 1966.

Michael D. Hiller, Montebello, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and CRAIG, District Judge.

ELY, Circuit Judge:

The appellant was convicted of bank robbery, an offense defined by 18 U.S.C. § 2113(a).

▮ The trial was to a jury, and it is contended that the evidence was insufficient to support the verdict. The robbery occurred on March 10, 1964, and the victim was the Bank of America, 47th and Broadway Branch, Los Angeles, California. Mrs. Patricia Clayton, a teller of the bank, was approached by a man at the window of her teller's cage. He presented a note on which was written, "Give me $650. I have a gun." After Mrs. Clayton had slowly counted out a number of $10 and $20 bills, the robber said, "That's enough," picked up the money, and walked away. Mrs. Clayton identified the appellant as the person who had presented the note and taken the money, later established to have been $390. Very shortly thereafter, another witness saw a man running along a street and into an alley near the bank. He reported his observation to a police officer who had learned of the robbery, and the officer, pursuing the course indicated by the witness, discovered a hat and coat which apparently had been thrown beneath a hibiscus bush. The hat and coat, introduced into evidence, were said by the bank teller to resemble the apparel worn by the robber and by the second witness to resemble clothing worn by the man he had seen running into the alley. To the overcoat was attached a laundry tag with the letters and number "CE–7" printed on one side and the number "3502," handwritten in ink, on the other side. Investigation disclosed that the tag had been affixed by a Los Angeles dry cleaning establishment operated by Mrs. Fanny Erving and her husband. From her records, as well as from her personal recollection, Mrs. Erving testified that on February 23, 1964, 16 days before the robbery, the appellant brought the coat, together with a necktie, to her place of business for cleaning.

The appellant testified in his own defense. He insisted that he was at his home and not in the bank's vicinity at the time of the robbery. He related that he was preparing to travel from Los Angeles to Chicago for the purpose of getting married and that he did, in fact, leave for Chicago on the evening of the day when the robbery occurred. He had learned from relatives that he was being sought by the police, and in May, 1964, he surrendered himself in Chicago.

The appellant, emphasizing that which he sees as being uncertainty and mistake in portions of the testimony offered by the prosecution, insists that his identification by the two witnesses was "weak." He points to testimony relating to the quality of his hair, whether curly or otherwise, and to certain conflicts as to the color of the coat. Our review of the record convinces us that whatever inconsistencies, discrepancies, and uncertainties it contains are not significant. Different people receive different impressions from their sights

of the same things. When honest witnesses testify as to their observation of persons, events, or objects, or their combination, discrepancies and inconsistencies are to be expected. Credibility is properly for the judgment of the trier of fact, who will fairly take into consideration all relating factors, including the degree of opportunity for the witness's observation as well as accompanying emotional influences bearing upon his capacity to observe with precise accuracy.

We cannot disregard a record in which it is shown that the bank teller positively identified the appellant as the man who robbed her,[1] nor can we ignore the testimony of another witness who positively identified appellant as the person he saw running near the bank shortly after the robbery had occurred.[2] If other portions of the testimony of these witnesses had demonstrated their unreliability in connection with the key question, that of identification, that conclusion was for the jury and not for us. The jury observed the witnesses, including the appellant, and it chose to believe the testimony upon which the conviction rests. That evidence is entirely adequate to support the verdict and the judgment of conviction.[3]

Complaint is made of certain comments made by the district judge during the introduction of testimony and in the course of his instructions to the jury. Appellant did not object to these remarks at the time they were made, but he now urges that they were prejudicial and indicative of an attitude on the part of the court which was unfavorable to

him. We do not agree. Our appraisal of the comments is that they were designed to insure to appellant that the prosecution's case be carefully analyzed and that he be given every consideration to which he was entitled. Since, as we have said, the appellant did not object to the remarks at the time they were made, it is reasonable to believe that appellant's counsel then entertained the view, as we now do, that the comments were not such as to affect appellant's rights adversely.

Two other contentions are made. There is no merit in either. The first of these arises from the fact that, following the imposition of sentence, the court ordered the government to reimburse appellant's attorney for expenses, amounting to $11.20, incurred by the attorney for the costs of service of a subpoena and of filing appellant's Notice of Appeal. Appellant contends that since the government has not complied with the order for reimbursement, his conviction should be vacated. Assuming the existence of a civil obligation on the part of the government, it stems from an order which did not and could not affect the validity of a trial which had been completed and a sentence which had already been imposed. The second of the two points under discussion, the last of the four which appellant makes, concerns the prosecuting attorney's remark during summation that "He [defendant], of course, denies the crime, but he doesn't appear to have a tremendous propensity to tell the truth, and you must regard his statements, his lies, in that light, and you must judge his testimony by the lies he

1. "Q Mrs. Clayton, is the man who robbed you present in the court room today?
   A Yes, he is.
   Q And where is he?
   A He is sitting here at the table.
   Q He is seated at the counsel table?
   A Yes."
2. "Q Is that man that you saw standing in front of the bank and later running from the bank on 47th Street present in the court room today?
   A Yes, he is.
   Q Where is he?

   A He is sitting at the table to the left.
   Q The counsel table?
   A Yes.
   Q The gentleman with the white shirt and black tie?
   A Yes, without the coat."
3. Our duty is to examine the evidence in the light most favorable to appellee. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Calhoun v. United States, 368 F.2d 59 (9th Cir., decided Oct. 14, 1966).

has told on occasion." The argument was made as the prosecuting attorney discussed an inconsistency between testimony given by the appellant at his trial and a statement which he had made to investigating officers during the course of investigation. The argument, to which no objection was interposed at the time it was made, was not improper.

Affirmed.