Edward S. LeMASTERS, Sr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 20376.

United States Court of Appeals Ninth Circuit.

April 21, 1967.

James F. Hewitt, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and MERRILL and DUNIWAY, Circuit Judges.

MADDEN, Judge:

The appellant was convicted and sentenced, in the United States District Court for the Northern District of California, for three violations of section 2113(b) of Title 18, United States Code. The section contains two paragraphs. The first paragraph is the one here involved. It reads as follows:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100.00 belonging to, or in the care, custody, control, management or possession of any bank,[1] or any savings and loan association, shall be fined not more than $5000.00 or imprisoned not more than ten years, or both.

The indictment contained three counts, each of which charged that the appellant "did take and carry away, with intent to steal and purloin," money of value in excess of $100 from the Watsonville, California, branch of the Bank of America, the money being taken from the account of one Tournour, by the appellant's falsely and fraudulently representing himself, by the presentation of stolen identification papers, to be Tournour. The amounts so obtained, on three separate occasions, were alleged in the indictment to have been $400, $3500 and $2800 respectively. The indictment alleged that the involved bank was a member of the Federal Reserve System, and that its deposits were insured by the Federal Deposit Insurance Corporation.

On December 28, 1964, the appellant succeeded in persuading a teller, acting as such, at the bank that he was Tournour, that he had lost his savings account pass book, that the bank should issue him a new pass book, of course in the name of Tournour. Having acquired the new pass book, he immediately withdrew $400 from the account by signing Tournour's name to a withdrawal slip; on the next day he withdrew $3500, and six days later he withdrew $2800. Tournour had not given the appellant any authority to withdraw any money from Tournour's account.

The appellant was indicted, as we have seen, and tried upon the indictment. At the close of the Government's proof, the appellant moved for a directed verdict of acquittal on the ground that, whereas the indictment charged the crime of larceny, the evidence proved the crime of obtaining money by false pretense. The appellant's motion was denied. The appellant introduced no evidence. He requested an instruction which would have had the same effect as if his motion for a directed verdict had been granted. The instruction was refused. The appellant noted an exception to the refusal. The jury found him guilty. He moved for a judgment of acquittal notwithstanding the verdict. That motion was denied. A judgment of conviction was entered. He received a five year sentence on each count of the indictment, the sentences to run consecutively. He moved for arrest of judgment on the ground that the indictment taken as a whole did not charge an offense against the laws of the United States. The motion was denied.

The appellant has, then, at every appropriate stage of the proceeding against him, made the point that the statute, for the alleged violation of which he was indicted, has no application to the conduct in which, as was proved by uncontroverted evidence, he engaged. In effect he contends that obtaining money from a bank by false pretense is not a federal crime. That does not mean that it can be done with impunity. No doubt such conduct is punishable in every state or other comparable governmental unit in the United States or its possessions. But federal criminal law is all

---

1. See 18 U.S.C. § 2113(f) for the definition of the word "bank" as that word is used in § 2113.

statutory law, and the Government does not claim that any federal statute other than section 2113(b) of Title 18, United States Code, the statute named in the appellant's indictment, applies to the appellant's conduct. Our question, then, is whether section 2113(b), properly construed, covers and makes punishable the obtaining of money from a bank by false pretenses. The question has no constitutional overtones. There would seem to be no room for doubt of the power of Congress to define as federally criminal the obtaining of money by false pretense from a bank in which the federal government has an interest to protect, just as Congress has so defined robbery of such a bank, or burglary of such a bank. The "Necessary and Proper" clause of the Constitution[2] would easily validate such a statute.

The appellant, as we have seen, contends that the language of § 2113(b), "takes and carries away, with intent to steal or purloin," is the language descriptive, at least primarily, of common law larceny, and not of obtaining money by false pretense, which is what the appellant did. Professor Perkins, in his text on Criminal Law, page 190, defines larceny as "the trespassory taking and carrying away of the personal property of another, with intent to steal the same." From the author's introduction to his chapter 4, "Offenses Against Property," we learn, page 187, that larceny as defined by him was a crime from a very early period of English law, but that the more refined conduct of obtaining the money or property of another by false pretense was not made criminal until, in 1757, the statute, 30 Geo. II, c. 24, § 1, was enacted. (Page 250)

If § 2113(b) had used the word larceny and had simply said that larceny from a bank, as bank is defined in that statute, was made a federal crime, it would be difficult to construe the statute as including obtaining money by false pretense. But § 2113(b) does not say that larceny from a bank shall be a fed-

eral crime. Nevertheless, it comes very close to saying that. Its key words are "takes and carries away, with intent to steal or purloin." Except for the failure to use "trespassory," and for the added word "purloin," this is almost verbatim Professor Perkins' definition of common law larceny. It is also very close to Blackstone's definition: "the felonious taking and carrying away of the personal goods of another." IV Commentaries 229.

The appellant urges that the legislative history of the section shows that Congress intended that it should have the restricted meaning for which he contends. We think there is important evidence as to what Congress intended to say when it enacted section 2113(b). In 1934 a bill having the purpose of punishing gangster activities in the United States in relation to banks was introduced in the Senate and was numbered S. 2841, 73rd Cong., 2d Sess. It contained six sections. The first section defined the word "bank" as used in the bill. Section 2 made it a crime to take and carry away property or money from a bank either (1) without the consent of the bank, or (2) "with the consent of such bank obtained by the offender by any trick, artifice, fraud or false or fraudulent representation * * *." If § 2 of S. 2841 had become law, there would be no doubt that the appellant's getting the bank's money by false representations was a federal crime. But, as we shall see, § 2 of S. 2841 did not become law. The bill contained a § 3 which made burglary of a bank a crime, and a § 4 which made a taking of money or property of a bank by force and violence, or by putting in fear, a crime. Thus S. 2841 covered, in plain language, larceny, § 2(1); false pretense, § 2(2); burglary, § 3; and robbery, § 4. The bill passed the Senate on March 29, 1934. 78 Cong.Rec. 5738.

S. 2841 went to the House of Representatives and was referred to the Committee on the Judiciary. It was

2. United States Constitution, Art. I, § 8, cl. 18.

amended by striking out §§ 2 and 3, i.e., its provisions about taking without consent, taking with consent obtained by false representations, and burglary, leaving only the bank robbery provisions. This action on the part of the Committee and the House was not unnatural, since the Attorney General, in recommending the legislation, emphasized the gangster interstate bank robbery activity as the evil to be cured.[3] The conflicting versions of the bill went to a Conference Committee, which accepted the House version, which was then passed by both houses and became law. As enacted, the statute contained four sections (see 48 Stat. 783). Section 1 defined "bank." Section 2 had two subsections. Subsection (a) makes one who "by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take" property of a bank guilty of an offense. Subsection (b) imposes a heavier penalty if the offender "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." Section 3 imposes a still heavier penalty if the offender, in the course of committing the offense or avoiding apprehension or escaping, kills or kidnaps any person.

In 1937 there was introduced in the House of Representatives a bill containing the language of what is now § 2113(b), the statute which we have for construction. 81 Cong.R. 2731. The bill also contained a provision which is now in the second paragraph of § 2113(a), making burglary of a bank a federal crime. Thus in. 1937 some of the provisions which had been in the 1934 Senate Bill S. 2841, which was passed by the Senate but was drastically curtailed by the House and was passed by Congress in the curtailed form, were again placed before Congress. With practically no discussion, this bill passed both houses and became law. In all respects relevant to this case, today's §

2113 of Title 18, United States Code, is what was enacted in 1937.

As enacted, the 1937 statute amends only subsection (a) of section 2 of the 1934 Act. (See 50 Stat. 749.) It is entitled "AN ACT To amend the bank-robbery statute to include burglary and larceny." It reenacts the language of subdivision (a) that we have quoted, and adds the following: "or whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,000 or imprisoned not more than one year, or both." The first new clause defines what is, in substance, the offense of burglary. The next two new clauses define what looks remarkably like the crimes of grand and petit larceny. Thus the language of the Act is consistent with its title. The only pertinent difference between the language of these two clauses and present subsection (b) of section 2113 is that the differentiating sum is $100 rather than $50.

The 1937 Act left in effect sections 2(b) and 3 of the 1934 Act. But it made them also apply the heavier penalties, in cases of assault or use of a dangerous weapon or killing or kidnapping in the

---

3. See Report No. 537, 73d Cong., 2d Sess., of the Senate Committee on the Judiciary, for the Attorney General's statement of the purpose of the bill, which was to enable the federal government to deal with "gangsters who operate habitually from one state to another in robbing banks."

course of the offense, to the new offenses, burglary and larceny, as well as to the old offense of robbery. The likelihood of such activity in cases of burglary and larceny is considerable, as it is in robbery cases. Such likelihood in cases of embezzlement or false pretenses, on the other hand, seems quite doubtful.

Our question is whether, when Congress in 1937 made guilty of a federal crime one who

> * * * takes and carries away, with intent to steal or purloin, any property or money * * *

of a bank, Congress intended by this abbreviated language to include all of the conduct which the Senate had, three years before, unsuccessfully asked Congress to make federally criminal. It will be remembered that the 1934 proposal, S. 2841, in its section 2, specified as criminal the taking and carrying away of money of the bank, with intent to convert it to the taker's use, (1) "without the consent of such bank," or (2) "with the consent of such bank obtained * * * by any * * * false or fraudulent representation * * *."

We are persuaded the Congress had no intention to include obtaining money by false pretense within the foregoing brief provision of the 1937 Act. When we remember that in 1934 Congress was unwilling to draw into the orbit of a federal criminal law even burglary or taking without consent from a bank, apparently because these crimes were adequately treated by state law enforcement agencies and were not involved in interstate gangster activities, it is hard to believe that in 1937 Congress was willing to involve the United States in the multiplicitous bad check, forgery and other fraudulent transaction cases which occupy so much of the attention of local law enforcement authorities but which, so far as appears, have no aspects of interstate gangster activities, and which present no danger that state law enforcement will be lacking in diligence.

In United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), the Supreme Court had before it for construction the word "stolen" in § 2312 of Title 18, United States Code, the "Dyer Act," which makes it a federal crime to transport a motor vehicle across a state line with knowledge that it is a stolen vehicle. The Court held that a vehicle of which possession had been acquired by any criminal conduct was a stolen vehicle within the meaning of that statute. In the Turley case, the court considered the history of the words "steal" and "stolen" and said: "Furthermore, 'stolen' and 'steal' have been used in federal criminal statutes, and the courts interpreting those words have declared that they do not have a necessary common-law meaning coterminous with larceny and exclusive of other theft crimes. Freed from a common-law meaning, we should give 'stolen' the meaning consistent with the context in which it appears." (352 U.S. at p. 412–413, 77 S.Ct. at p. 400) It appears that the court would make the same observation about the word "purloin," as is indicated by the cases that it cites in footnotes 8 and 9, at pages 412–413 of the opinion, 77 S.Ct. 397. As the cases there cited indicate, "purloin" is frequently used as synonymous with "steal," but is sometimes held to indicate an element of stealth not indicated by the word "steal."

The stolen automobile statute hereinabove referred to was enacted in 1919. There was a conflict of decisions in the federal circuits [4] as to whether the word "stolen" meant obtained by larceny, or had the broader meaning which the Supreme Court, as we have seen, finally gave it in the Turley case, supra. When Congress, in 1937, enacted § 2113(b) it could not have been relying upon any settled opinion that "steal" included a

---

4. See United States v. Turley, 352 U.S. 407, 410, 77 S.Ct. 397, for the Supreme Court's statement, citing the cases, that the Fifth, Eighth and Tenth Circuits favored the narrow definition of stolen, while the Fourth, Sixth and Ninth Circuits favored the broader one.

variety of ways of dishonestly getting another person's money. There was no settled opinion until 20 years later when the Turley opinion came down. In the case of Smith v. United States, 9 Cir., 233 F.2d 744, supra, Chief Judge Denman of this court wrote:

> In 1919 when this statute was passed Congress was concerned with large scale automobile theft and the problem of state power ending at the state line.[5] As the Supreme Court observed in a decision upholding the constitutionality of the act,[6]
>
> > The quick passage of the machines into another state helps to conceal the trail of the thieves, gets the stolen property into another police jurisdiction and facilitates the finding of a safer place to dispose of the booty at a good price.
>
> Automobile thieves may obtain cars in many ways. Typically an unattended car is taken. However, a thief may give a dealer a worthless check for a certificate of title. A trusted employee of an automobile dealer may have lawful possession of the stock of cars and later take them into another state and wrongfully sell them. These are larceny, false pretenses and embezzlement situations, but the evil is the same. The owner of the car is deprived of it, and state law is ineffective to protect him.
>
> Congress would have no reason to differentiate among the various theft crimes in view of its purposes in enacting Section 2312. The courts should not graft such a distinction on the statute. (P. 747)

In the case of the "stolen" automobiles transported across state lines, if the Dyer Act had not been interpreted to say that one who obtained an automobile by false pretense was covered by the federal law, no jurisdiction at all would have effective control over what Congress regarded as a great evil. That fact would have given to the federal courts a powerful urge toward the broad interpretation of the word "stolen." In spite of that urge, as we have seen, the circuits which passed upon the question were divided 3 to 3 and it required the decision of the Supreme Court in Turley, supra, to resolve the conflict. It is apparent that the words "stolen," "steal" and "purloin" are far from clear and unambiguous and that background information and legislative history, if available, are important in their interpretation.

██ The 1937 enactment of 18 U.S. Code § 2113(b) had a background and legislative history wholly different from those of the 1919 stolen motor vehicle act. We are aware of no background of evil at which Congress was pointing the statute except the evil of interstate operation of gangster bank robbers. As we have seen, the Senate in 1934 passed a bill clearly and expressly creating several federal crimes against banks, including the crime of obtaining by false pretense. The House, and the Congress, rejected the bill, enacting only the robbery provisions. In 1937, without any further discussion of evil to be cured, Congress enacted § 2113 clearly covering robbery and burglary, and including § 2113(b), the provision containing the ambiguous words "steal" and "purloin." In construing the words we are obliged by the Turley case to give them a "meaning consistent with the context in which [they] appear." We think that that context, in the light of legislative history, requires that they be construed as not covering the obtaining of money by false pretenses. The words are used in conjunction with the words "takes and carries away," and these are the classic words used to define larceny. The words do not have a necessary common law meaning; rather, they are ambiguous. They are used in a statute, the purpose of which, as stated in its title, is " *   *   *

---

5. See H.R.Rep. No. 312, 66th Cong., 1st Sess., 1, 4, (1919); 58 Cong.Rec. 5470–5478, 6433–6435 (1919). (Footnote by the court.)

6. Brooks v. United States (1925), 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699.

to include larceny." In such a case, the title is "a useful aid in resolving ambiguilty." FTC v. Mandel Brothers, Inc., 1959, 359 U.S. 385, 389, 79 S.Ct. 818, 822, 3 L.Ed.2d 893; Maguire v. Commissioner, 1941, 313 U.S. 1, 9, 61 S.Ct. 789, 85 L.Ed. 1149.

In the bank situation we see no reason, urgent or otherwise, why Congress in 1937 should have wanted to enter the field of obtaining by false pretenses, duplicating state law which was adequate and effectively enforced, and the duplication of which would bring innumerable cases, most of them small, within the jurisdiction of federal prosecutors and courts. Congress was as aware in 1937 as it was in 1934, when it rejected the unambiguous provision making obtaining by false pretense from a bank of federal crime, that such an extension of federal law would serve no purpose except to confuse and dilute state responsibility for local crimes which were being adequately dealt with by state law. None of the reasons which persuaded the circuits and finally the Supreme Court to interpret broadly the word stolen in the motor vehicle act were present in 1937, when Congress wrote § 2113, or are present today.

■ If the oft cited canon of statutory construction that ambiguities in penal statutes are to be resolved in favor of the accused has any vitality, this is a plain case for its application.

In Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640, the Supreme Court had for construction the word "felony" in the burglary provision in the 1937 bank crimes statute, 18 U.S. Code § 2113 (1943), another provision of which statute is our concern in this case. The opinion of Mr. Justice Douglas, for the Court, gave the word felony a narrower construction than that urged by the Government. On the general subject of interpretation of federal crime statutes, the Court said:

> Since there is no common law offense against the United States [citations omitted], the administration of criminal justice under our federal system has rested with the states, except as criminal offenses have been explicitly prescribed by Congress. We should be mindful of that tradition in determining the scope of federal statutes defining offenses which duplicate or build upon state law * * * That consideration [that the bar of double jeopardy is not applicable] gives additional weight to the view that where Congress is creating offenses which duplicate or build upon state law, courts should be reluctant to expand the defined offenses beyond the clear requirements of the terms of the statute. (Pp. 104–105, 63 S.Ct. p. 486)

With deference, we find ourselves in disagreement with the recent decision of the United States Court of Appeals for the Fifth Circuit in Thaggard v. United States, 354 F.2d 735 (1965), cert. den. 86 S.Ct. 1222, 383 U.S. 958, 16 L.Ed.2d 301 (1966).

Judgment reversed.