**William S. BENNETT, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21063.**

United States Court of Appeals
Ninth Circuit.

Aug. 26, 1968.

---

James Martin MacInnis (argued), San Francisco, Cal., John Mark Chargin, San Jose, Cal., for appellant.

Cecil Poole (argued), U. S. Atty., San Francisco, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

BARNES, Circuit Judge:

Appellant Bennett was charged in a thirty-nine count indictment with the offenses of theft of bank property over $100, 18 U.S.C. § 2113(b), conspiracy to misapply bank funds, 18 U.S.C. §§ 656, 371, and aiding and abetting the misapplication of bank funds, 18 U.S.C. §§ 656, 2. A jury verdict resulted in Bennett's conviction under 18 U.S.C. § 2113(b); he was acquitted of all counts in which he was alleged to have acted with his codefendant, Don C. Silverthorne. Five errors are asserted by Bennett in this appeal, four of which we do not discuss. We shall devote our attention to the proposition that § 2113(b) makes unlawful only a trespassory taking of the bank's property, not a taking by some other means, and whether the evidence shows a taking within the scope of the statute.

Jurisdiction in the district court rested on 18 U.S.C. § 3231, and rests here on 28 U.S.C. §§ 1291 and 1294.

That portion of § 2113(b) with which we deal is:

"Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management or possession of any bank * * * shall be fined not more than $5,000 or imprisoned not more than ten years, or both." [1]

---

1. Count II of said indictment reads as follows:

"* * *

"1. The Grand Jury realleges each and every allegation contained in paragraphs one and two of Count One of this Indictment as though fully set out herein.

"2. On or about January 22, 1964 in the City and County of San Francisco, State and Northern District of California, the defendant WILLIAM S. BENNETT, did take and carry away with intent to steal and purloin from the San Francisco National Bank, certain money aggregating $8,000 belonging to the bank, accomplished as follows:

"On or about January 23, 1964, one William R. Atkinson applied to the bank

In LeMasters v. United States, 378 F.2d 262 (9 Cir. 1967) (decided by this court after the instant case was tried in the district court), we entertained the issue now before us. There, the appellant had impersonated a bank depositor by producing stolen identification papers. He persuaded bank officials that his deposit book had been lost and a new book, in the name of the impersonated depositor, was issued LeMasters. He withdrew funds from the account for which he had been issued the deposit book and was thereafter indicted for the theft of those funds under § 2113(b). This court held that the language of the statute, "takes and carries away, with the intent to steal or purloin," was descriptive of common law larceny and was not descriptive of obtaining money by false pretenses. We therein discussed English law and congressional history, including the fact that in 1934 Congress passed a law making bank robberies a federal crime (18 U.S.C. § 2113(a)), but refused to pass a law against the obtaining of money by false pretenses. In 1937, Congress passed § 2113(b) containing the ambiguous words "steal or purloin," for the purpose of including larceny. We held that § 2113 (b) encompassed only the offense of larceny. The question before us in the instant case then, is whether the evidence shows common law larceny, within the statute, or an offense without the statute.

Bennett's codefendant, Silverthorne, organized and opened the San Francisco National Bank in June, 1962. As president of the bank, Silverthorne embarked on a course of extensive money lending, for which service he personally assessed substantial fees, or "points." Bennett first met Silverthorne when he came to the bank as a borrower. After considerable business dealings with Silverthorne, Bennett undertook to solicit borrowers for Silverthorne's bank. On many occasions the bank loaned money to individuals procured by Bennett. As remuneration for bringing business to the bank, Bennett received a portion of the "points" Silverthorne and/or Bennett charged for the loans.

The incident with which we are concerned took place after Silverthorne and Bennett had begun to work together. Atkinson, a rancher and land developer, went to Bennett in January, 1964, seeking a loan of $50,000. After meeting with Bennett on several occasions, Atkinson and his wife filled out application papers which Bennett submitted to Silverthorne for the purpose of obtaining a loan from the San Francisco National Bank. The Atkinsons discussed with Bennett the payment of "points" for the loan in the amount of 10 per cent of the principal thereof, but no firm figure was agreed upon prior to the confirmation of the loan. On January 22, 1964, Bennett informed Atkinson that he had obtained a loan from the San Francisco National Bank in the amount of $58,000, the $8,000 figure representing the "points" which were being charged. At this time Bennett told Atkinson that the "point" charge was higher than the 10 per cent figure they had previously discussed because "[t]he bank was new and Mr. Silverthorne wanted the bank to show a profit, to look good in the eyes of the shareholders." Bennett told Atkinson

for a loan in the amount of $50,000 and the defendant BENNETT acted as an intermediary between the said Atkinson and the said SILVERTHORNE. In such capacity, the defendant BENNETT advised the said Atkinson that there would be a loan fee or point charge of $8000. In payment of said charge the said Atkinson executed and delivered to defendant BENNETT a check payable to the San Francisco National Bank in the amount of $8000 dated January 22, 1964. The

defendant BENNETT thereafter unlawfully cashed the above check in exchange for a cashier's check on January 23, 1964 in the amount of $8000. The said defendant BENNETT thereafter on January 27, 1964 deposited the proceeds of said cashier's check into his personal account under the name of Suisun Properties from which he later withdrew the said sum and converted it to his own use and the bank lost custody and control thereof." (C.T. 8.)

further that he, Silverthorne, and one other individual controlled the bank. He instructed Atkinson to write a check for the points in the amount of $8,000 payable to the San Francisco National Bank.

The following day, Bennett took the check to the San Francisco National Bank and instructed a teller to issue a cashier's check payable to him in the amount of $8,000 in exchange for the Atkinson check. As it was not the bank's usual practice to issue a cashier's check in exchange for a third party check to other than the named payee, the teller, a Mrs. Wu, took the check to the head cashier, a Mrs. Richards, for her authorization of the transaction. Mrs. Richards gave her assent and a cashier's check in the amount of $8,000 was typed, payable to "W. S. Bennett," and delivered to Bennett. (Ex. 2(b).) The register copy of the cashier's check, kept by the bank, reflected that the original thereof was purchased by Bennett with a check drawn on the San Francisco National Bank. The purchasing check was not identified further. On January 28, 1964, Bennett deposited the cashier's check into one of his accounts.

■■ Because of the peculiar facts of this transaction, the indictment was careful to avoid allegations that the money was in the "care", "custody", "control", "management", or "possession" of the bank. It alleged rather, in the language of the statute, that the money "belonged to" the bank. This allegation is, however, but descriptive of the bank's relation to the money. It is the statutory language, "steal and purloin," which describes larceny as the offense allegedly committed. LeMasters v. United States, supra. To consummate the offense of larceny there must occur a taking of property which is trespassory in nature, "without the consent of the owner." People v. Johnson, 136 Cal.App.2d 665, 673, 289 P.2d 90, 94 (1955); People v. Earle, 222 Cal.App.2d 476, 35 Cal.Rptr. 265 (1963); Callan v. Superior Court, 204 Cal.App.2d 652, 22 Cal.Rptr. 508 (1962); People v. Torres, 201 Cal.App.2d 290, 20 Cal.Rptr. 315 (1962); LeMasters v. United States, supra. Regardless of the criminal intent indulged in by Bennett, if any, there was not a taking of the $8,000 without the bank's consent. Assuming that the title to the $8,000 passed from Atkinson to the bank when the check was written and delivered to Bennett as an "intermediary" the money at that time "belonged to the bank." Bennett was given possession of the check, and the bank held title thereto. At this time it was not possible for Bennett to commit larceny against the bank for he had possession of the check which he had lawfully come by, that is, as agent of the bank for delivering possession of the check to the bank. An appropriation of the check by Bennett to his own use at this time would have constituted embezzlement. 18 U.S.C. § 656. But once Bennett delivered possession of the check to the bank, the bank had both title and possession of the $8,000. The only manner by which Bennett could have violated § 2113(b) at this juncture was to have obtained possession of (but not title to) the $8,000 *without* the bank's consent. But that consent was unequivocally given by Mrs. Richards. Both possession and title to the money were passed to Bennett by means of the cashier's check.

Had the $8,000 fee been due and owing the bank from the inception of the loan agreement between Atkinson and the bank, we would have, under these facts, a theft by false pretense, for then Bennett would have obtained both title and possession of the money from the bank by not representing to the cashiers the true nature of the $8,000 check from Atkinson. But the points charged by Silverthorne and Bennett for loans extended by the bank were not charges for the bank's services; the bank received its compensation through interest on the loans. The points were personal remuneration to Bennett and/or Silverthorne for having caused the bank to extend the loans. Neither in this court nor in the court below has the government asserted that this practice is illegal. The true nature of the $8,000 in points paid by Atkinson was a fee to Bennett and/or Silver-

thorne, albeit the money belonged to the bank once the check was written. If misrepresentations were made by Bennett at any time, they were made to Atkinson to conceal the true recipient of the fee which Atkinson was paying for the loan.

We conclude that the $8,000 was actually in the defendant Bennett's control and possession for at least five days; that this control and possession was obtained unlawfully; either through the cooperation of employees of the bank, or by acts of Bennett constituting the taking of property by false pretenses, but not "by taking and carrying away with intent to steal or purloin," i. e., not by common law larceny, "a trespassory taking."

We come to this conclusion reluctantly, but feel we are required to so do (a) by the legislative history of 18 U.S.C. § 2113(b), as carefully researched in *LeMasters*, supra; (b) by the specific holding in *LeMasters*, supra; (c) by the rules enunciated by the Supreme Court of the United States specifically related to 18 U.S.C. § 2113. In *LeMasters*, supra, Judge Madden quoted Mr. Justice Douglas in Jerome v. United States, 318 U.S. 101 at 104, 63 S.Ct. 483, 87 L.Ed. 640 (1942):

"'Since there is no common law offense against the United States * * *, the administration of criminal justice under our federal system has rested with the states, except as criminal offenses have been explicity prescribed by Congress. We should be mindful of that tradition in determining the scope of federal statutes defining offenses which duplicate or build upon state law * * * That consideration [that the bar of double jeopardy is not applicable] gives additional weight to the view that where Congress is creating offenses which duplicate or build upon state law, courts should be reluctant to expand the defined offenses beyond the clear requirements of the terms of the statute.'"

Judge Madden in *LeMasters*, supra, said at page 268:

"[W]e see no reason, urgent or otherwise, why Congress in 1937 should have wanted to enter the field of obtaining by false pretenses, duplicating state law which was adequate and effectively enforced, and the duplication of which would bring innumerable cases, most of them small, within the jurisdiction of federal prosecutors and courts. Congress was as aware in 1937 as it was in 1934, when it rejected the unambiguous provision making obtaining by false pretense from a bank of [sic] federal crime, that such an extension of federal law would serve no purpose except to confuse and dilute state responsibility for local crimes which were being adequately dealt with by state law. None of the reasons which persuaded the circuits and finally the Supreme Court to interpret broadly the word stolen in the motor vehicle act were present in 1937, when Congress wrote § 2113, or are present today."

Our finding that no violation of federal law occurred under the foregoing facts requires that the judgment of conviction be reversed.