**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Curtis BOWSER, Defendant-Appellant.**

**No. 75–2435.**

United States Court of Appeals,
Ninth Circuit.

March 29, 1976.

Rehearing and Rehearing En Banc
Denied June 9, 1976.

Frederic S. Baker (argued), San Francisco, Cal., for defendant-appellant.

Janet Aitken, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

OPINION

Before BROWNING and DUNIWAY, Circuit Judges, and CHRISTENSEN,* District Judge.

CHRISTENSEN, District Judge.

The larceny from the bank may have been a fake as far as the appellant and a coconspirator teller were concerned; it was very real as to the bank from which more than $5,000 of its money was taken and carried away without its consent by a third conspirator according to the proofs of the government. This distinction leads to our rejection of the primary contention on this appeal: that there was fatal variance between the allegations of the indictment based on a theory of larceny and the proof which established no more than that appellant was associated with the teller in the commission of embezzlement.

A three count indictment jointly charged Sharon Held, Robert P. Farrelly and appellant Curtis Bowser with the offenses of entering a bank with intent to commit a felony, to-wit: bank larceny, in violation of 18 U.S.C. § 2113(a),[1] bank larceny in violation of 18 U.S.C. § 2113(b),[2] and conspiracy to commit bank larceny in violation of 18 U.S.C. § 371.[3] Upon arraignment each defendant entered a plea of not guilty. Thereafter, Farrelly and Held withdrew such pleas and entered pleas of guilty to count three of the indictment, the other counts being dismissed as to them. Appellant stood trial before a jury and was convicted and sentenced on all three counts.

The evidence adduced by the government, in the light of appellant's tes-

---

*Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

1. Whoever enters . . . any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . and in violation of any statute of the United States, or any larceny—
    Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

2. Whoever takes and carries away, with intent to steal or purloin, any property or money . . . exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank . . . shall be fined not more than $5,000 or imprisoned not more than ten years, or both. . . .

3. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

timony and the other evidence he presented as to his claimed alibi, was ample to prove that he, Held and Farrelly conspired to take money from the Crocker Bank, 1 Montgomery Street, San Francisco, California, through feigned intimidation of Held as teller of the bank; that pursuant to their plan appellant waited outside in a getaway car and Farrelly entered the bank and handed Held a note demanding money under threat of bodily harm;[4] that Held delivered the sum of $5,158.37 of the bank's funds to Farrelly, who placed the money into a dark attache case he had carried with him into the bank; that Farrelly then joined appellant in the getaway car, and that Held waited moments after Farrelly left her window, then told a superior in the bank that she had been robbed and produced the note.

Appellant claims here, as he maintained below, that he was charged under the wrong statutes; that the basis of the indictment should have been embezzlement by an employee of an insured bank in violation of 18 U.S.C. § 656,[5] and for this reason his conviction must be reversed.

There would be a certain poetic justice in rejecting this contention out of hand by taking the conspirators at their word that this was, indeed, a trespassory taking under threat of violence, as documented by the note handed to the teller. But we have looked deeper to assure ourselves that the substance of the circumstances as well as their form warranted the charges as laid.

As we view it, it is much less realistic to think that appellant and Farrelly aided and abetted Held in embezzlement than that Held's cooperative compliance made it easier for them to accomplish larceny. It may be conceded that up to a point Held was lawfully in possession of the funds as a trusted employee of the bank. But in turning over the bank's money to one obviously entitled to neither its benefits nor its possession, Held was not representing the bank but was acting adversely to it by aiding in accomplishing a trespassory taking and carrying away of bank property.

Perhaps from as early as *The Carrier's Case* in 1473,[6] most common law courts would have thought the circumstances sufficient to establish the offense of larceny. We need not be troubled by the idea of feigned or sham crimes which have been of concern in other contexts[7] since, as we observed at the beginning, the offense of larceny was real and unconsented to as far as the bank was concerned. To establish that the gist of the present case is bank larceny pure and simple, resort need not be had to any expansion of the statute in question by reference to legislative history or general purpose.[8] The authorities primarily relied upon by appellant, *LeMasters v. United States,* 378 F.2d 262 (9th Cir. 1967), and *Bennett v. United States,* 399 F.2d 740 (9th Cir. 1968), demonstrate the significant distinctions.

In *LeMasters* the defendant was charged with bank larceny in claimed violation of § 2113(b) and with related offenses, as in the present case. However, in that case the facts in no way suggested a trespassory

---

4. "This is a robbery, give me large bills only. I am not alone, cooperate or I will shoot."

5. Whoever, being an . . . employee of . . . any . . . national bank or insured bank . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys . . . of such bank . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both . . . ..

6. Y. B. Pasch. 13 Edw. 4, f. 9, pl. 5 (1473), 64 Selden Soc'y 30 (1945), see Fletcher, *The Meta-*

*morphosis of Larceny,* 89 Harv.L.Rev. 469, 481 (1976).

7. Fletcher, *The Metamorphosis of Larceny, supra,* note 6, at 491–96.

8. Cf. *United States v. Turley,* 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), which deals with the Dyer Act. The rationale of *Turley* which interpreted the word "stolen" so as not to limit it to situations which at common law would be considered larceny was considered in reference to the statute here in question and

taking.[9] In *Bennett* a similar conclusion was reached because the bank intended to part with its funds and there was no taking or carrying away with intent to steal or purloin.[10]

*United States v. Brown,* 455 F.2d 1201 (9th Cir.), *cert. denied,* 406 U.S. 960, 92 S.Ct. 2069, 32 L.Ed.2d 347 (1972), is more in point. Wells Fargo Bank in Oakland, California, had been robbed of approximately $6500. Mrs. Hoff, the victimized teller, reported the incident and furnished a description of the robber to the FBI. After further investigation and questioning, Mrs. Hoff admitted her involvement in the crime, contending that she was forced to take part. She was indicted, but the charges against her were dismissed in exchange for her testimony against the codefendants who were convicted of bank larceny. At the trial and on appeal, among other things, the latter contended that the evidence did not support the crime of larceny; they argued that because of Mrs. Hoff's position as a trusted employee of the bank, the most they were guilty of was embezzlement. This court held that "[r]egardless of Mrs. Hoff's status, the evidence establishes the requisite intent coupled with a trespassory taking sufficient to constitute larceny." *Id.* at 1204.

The appellant here attempts to draw some significant distinctions by pointing out that in *Brown* the teller cooperated with the robbers out of fear of exposure of her indiscretions to her husband if she did not participate while Sharon Held in this case admitted that she was a willing participant. Subjective motivations of a conspirator cannot carry such decisive consequences in the present context. Whether through fear, blackmail, intimidation, persuasion, love, avarice, hunger, or complex combinations of other forces to which the human mind may be subjected, the fact remains that in both cases there was a trespassory taking as against the bank whose consent could not be constructed out of the adverse conduct of the teller, however motivated. There was no variance between allegations and proof in this case any more than in *Brown.*

■ Appellant next contends that significant evidence against him which resulted from a search of his apartment should have been suppressed because the "affidavit for the search warrant failed to meet the constitutional standard of probable cause set forth in *Aguilar*".[11] We do not agree. The special agent's affidavit based in part upon Farrelly's confession contrary to his penal interest supplied details which were sufficient to establish the required probable cause. Nor was the information fatally "stale", as argued by appellant because the property sought by the government had been last seen by Farrelly in appellant's apartment a month prior to the execution of the affidavit. The search warrant was requested the same day Farrelly made his statement to the FBI. The need for the warrant was unknown before then. The items sought included a particular suit, an

rejected in *LeMasters v. United States,* 378 F.2d 262 (9th Cir. 1967).

**9.** In *LeMasters,* ". . . the appellant succeeded in persuading a teller, acting as such, at the bank that he was Tournour, that he had lost his savings account pass book, that the bank should issue him a new pass book, of course in the name of Tournour." 378 F.2d at 263. Tournour had not given the appellant any authority to withdraw any money, but appellant succeeded in obtaining the money by signing Tournour's name to a withdrawal slip and thus duping the bank. There was no federal law against obtaining money under false pretenses. A judgment of conviction was reversed by this court because a trespassory taking had not been shown.

**10.** The defendant as an intermediary in procuring a loan, obtained a check from a borrower for $8,000 which he presented to the bank in which he was an officer for a cashier's check made out to himself. Then he deposited the check to his own account and wrongfully converted the proceeds. This court held that he was not guilty of bank larceny, although the money was obtained unlawfully either through employees of the bank or by acts of the defendant constituting the taking of property by false pretenses.

**11.** *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

attache case and a red felt pen which, although connecting appellant with the larceny, were likely to remain in his apartment by reason of their non-contraband nature. Cf. *United States v. Brown,* 455 F.2d 1201 (9th Cir.), *cert. denied,* 406 U.S. 960, 92 S.Ct. 2069, 32 L.Ed.2d 347 (1972).

■ Appellant claims that the United States Attorney was guilty of prejudicial misconduct by suggesting that the appellant had influenced the teller with mind affecting substances. The record fails to bear out this contention. Held merely testified that she had used such a substance the morning of the crime. An objection to further inquiry was sustained. There was no motion to strike the previous answer, which in any event did not expressly involve the appellant, and may not have been entirely irrelevant to the witness' observations. The argument of the United States Attorney that "somebody is committing perjury" is assigned as error. Obviously in view of its context this statement was simply advanced in agreement to a similar comment by appellant's counsel from another viewpoint in his final argument.[12] There was no objection at the time of the trial to the statement of government counsel and there was no prejudicial error, plain or otherwise. *Davison v. United States,* 368 F.2d 505 (9th Cir. 1966). Cf. *Taliaferro v. United States,* 47 F.2d 699 (9th Cir. 1931), where counsel added "I know that of my knowledge", and we reversed.

■ Appellant complains of the admission into evidence of statements made by different witnesses at trial. Over appellant's objection, one of these was permitted to testify that following the time of the crime she asked Farrelly where he got his money and was told that he, Bowser and a girl had robbed a bank. This hearsay statement by Farrelly, not made in the course of the conspiracy might have been admissible pursuant to Fed.R.Evid. 801(d)(1), as argued by the government, had those rules been in effect at the time of the trial, but they were not.[13] We need not decide whether the testimony under preexisting law was proper as rehabilitation of the credibility of Farrelly which had been attacked by appellant since any related flaw was non-prejudicial beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ Similarly, the testimony of Held concerning encouragement of her prostitution by appellant was non-prejudicial beyond a reasonable doubt. In view of its insignificance in light of the other evidence concerning the relationship between the appellant and Held, and overwhelming proof of appellant's guilt of the offenses for which he was convicted, the outcome of the trial could not have been substantially affected. Appellant's other contentions do not require comment.

AFFIRMED.

---

12. The defense argument was not made part of the record, but immediately preceding the statement complained of by appellant the United States Attorney had stated:

"Let's take a look at the statement of the case presented to you by Counsel. Counsel is quite right as to what the problem is in this case. He nailed it almost in the first statement. Somebody here is committing perjury. Somebody is lying."

13. The trial was held in April, 1975. The rules did not become effective by their terms until 180 days after January 2, 1975, or July 2, 1975.