UNITED STATES of America,
Plaintiff-Appellee,

v.

Samuel Keith SHOELS,
Defendant-Appellant.

No. 81–1748.

United States Court of Appeals,
Tenth Circuit.

Aug. 11, 1982.

Vicki Mandell-King, Asst. Fed. Public Defender, Denver, Colo. (Michael G. Katz, Fed. Public Defender, Denver, Colo., with her on the brief), for defendant-appellant.

Bruce F. Black, Asst. U. S. Atty., D. Colo. (Joseph F. Dolan, U. S. Atty., and Carole C. Dominguin, Asst. U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, DOYLE and LOGAN, Circuit Judges.

SETH, Chief Judge.

The appellant, Samuel K. Shoels, appeals his conviction under 18 U.S.C. § 2113(b) for unlawfully taking away with the intention of stealing money or other things of value from the Majestic Savings and Loan Association. On appeal he claims that § 2113(b) does not include the crime of obtaining property by false pretenses, thus warranting reversal. In addition he claims several trial errors.

The facts leading up to the appellant's indictment and conviction are as follows. On July 2, 1980 a man identifying himself as Irving Butler presented a personal check payable to himself drawn on the account of Edward Leroy Reynolds for $1,200. The bank teller explained that the bank had a $500 cash limit on withdrawals, but she could give him $500 in cash and a $700 courtesy check or a courtesy check for $1,200. Before disbursing any funds or checks the teller determined that there were sufficient funds in the account of Irving Butler to cover the check. Therefore, she made out a courtesy check to "Irving Butler" for $1,200 and told the person who had so identified himself that the check could be cashed at the University National Bank.

The next day the individual returned to the Majestic Savings and Loan and told Julia Eyster, a teller, that he was unable to cash the $1,200 courtesy check because he did not have a Colorado driver's license although he had other picture identification. After an examination of the identification she gave him $500 in cash and issued a courtesy check for $700.

At the trial Edward Leroy Reynolds testified that he had never written a check to an Irving Butler for $1,200. He testified that he had met the defendant, Mr. Shoels, when he sold his Lincoln Continental to him. Mr. Shoels had paid part in cash when he took possession of the car, and the balance was paid later. The same day that defendant Shoels completed payment on the car, Mr. Reynolds' home was burglarized. Mr. Reynolds testified that he returned home at midnight that night when he saw the car he had sold parked on the street. He entered the house and found furniture overturned and ripped. He saw a figure who looked like Samuel Shoels get into the car and drive away.

Irving Butler testified that he had a savings account with the Majestic Savings and Loan Association, but that he had never received a check for $1,200 from Mr. Reynolds.

At trial teller Julia Eyster testified that she had picked the defendant from a photographic display, but that she could not recognize the individual if she were to see him again. The branch manager, Della Perez, testified that she had seen defendant Shoels in the branch office on July 3. She had chosen the defendant from a photographic display and she also made an in-court identification of the defendant.

The appellant claims that the activity for which he was convicted constituted the crime of obtaining property by false pretenses, and this was not encompassed within the term "to steal or purloin" as used in 18 U.S.C. § 2113(b). Three circuits

have agreed with this narrow construction of § 2113(b), finding that the legislative history of the statute requires that its application be limited to common law larceny. *See United States v. Feroni*, 655 F.2d 707 (6th Cir.); *LeMasters v. United States*, 378 F.2d 262 (9th Cir.); *United States v. Rogers*, 289 F.2d 433 (4th Cir.). Obtaining money or property by false pretenses is generally considered to have several elements. These include the false representation by one who knows it to be false and made with the intent to cause the victim to part with title to certain property, and the victim so passes title to the person charged. The title aspect is a factor to be considered in the context of this case. However, the possession versus title distinctions have not proved to be of great assistance. The familiar crime of "larceny by trick" is within the general definition of larceny and is still no more than a form of larceny; that is, the trespassory taking of personal property with the intent to take it away permanently from the owner.

We must also observe that the legislative history of this act is indeed sparse and not really helpful. Resort in several of the opinions is to material which cannot be considered legislative history in the usual sense.

A narrow construction has been rejected by four circuits. *See United States v. Bell*, 678 F.2d 547 (5th Cir.) 1982 en banc; *United States v. Simmons*, 679 F.2d 1042 (3d Cir.), 1982; *United States v. Guiffre*, 576 F.2d 126 (7th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128; *United States v. Fistel*, 460 F.2d 157 (2d Cir.). These courts have relied primarily upon *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430, where the Supreme Court construed the term "stolen" in an auto theft case. The Court there held that "stolen" as used in 18 U.S.C. § 2312 included *all* felonious takings with the intent to deprive the owner of ownership regardless of whether or not the theft constituted common law larceny.

In *Hite v. United States*, 168 F.2d 973 (10th Cir.), this court interpreted the word "stolen" as used in the National Motor Vehicle Theft Act, 18 U.S.C. § 408. In that case the defendants purchased an automobile by using aliases. They gave back a mortgage to secure the unpaid balance. Later they represented themselves as two other people and purchased another car. They transferred the first automobile to the car dealer and executed a note for the balance. This sale was induced by a misrepresentation of their bankbook balance. Later they exchanged the second car for a third. In determining whether the National Motor Vehicle Theft Act was limited to just larceny we cited *Loney v. United States*, 151 F.2d 1, 4 (10th Cir.), for the proposition that the crime be a trespassory taking.

" 'Where a person intending to steal another's personal property obtains possession of it, although by or with the consent of the owner, by means of fraud or through a fraudulent trick or device, and feloniously converts it pursuant to such intent, the owner will be regarded as having retained constructive possession. Hence, in such cases the conversion constitutes a trespass.

" 'The foregoing rule is not applicable where the owner, although induced by fraud, intends to and does part voluntarily with his title to the property, as well as his possession thereof, not expecting the property to be returned to him or to be disposed of in accordance with his directions.' " *Hite v. United States*, 168 F.2d 973, 975 (10th Cir.).

In *Hite* this court determined that the word "steal" imports the common law offense of larceny. Thus, since the defendants received title to the automobiles (despite the mortgages), the cars were not "stolen" under the statute. In *United States v. Turley* the Supreme Court rejected that analysis and found that the term "steal" in the Motor Vehicle Theft Act should not be limited to common law larceny. Thus, under *Turley*, the facts in *Hite* would constitute a violation of § 408.

■ A review of the cases and the statute requires us to follow the broader

construction of § 2113(b) to include the act here charged within the term to "steal." Section 2113(b) prohibits the "tak[ing] and carr[ying] away, with intent to steal or purloin, any property or money or any other thing of value ... in the care, custody, control, management, or possession of any bank, or any savings and loan association." The term "steal" has no accepted common law meaning. *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430. In determining the meaning of "stolen" *Turley*, at 412–13, 77 S.Ct. at 400, states that:

> " '[S]tolen' and 'steal' have been used in federal criminal statutes, and the courts interpreting those words have declared that they do not have a necessary common-law meaning coterminous with larceny and exclusive of other theft crimes. Freed from a common-law meaning we should give 'stolen' the meaning consistent with the context in which it appears."

We have considered the purpose of the statute and the little available legislative history in determining the definition of "steal." As mentioned, the legislative history of § 2113(b) does not provide a clear indication as to how "steal or purloin" is to be defined. *Compare United States v. Simmons*, 679 F.2d 1042, (3d Cir.), and *LeMasters v. United States*, 378 F.2d 262 (9th Cir.).

However, Congress employed the term "steal or purloin" and not the common law term "larceny" in describing the proscribed conduct, and this is the best indication of the scope of the act. An examination of cases construing other federal statutes using the term "steal" reveals that it is usually given a meaning broader than common law larceny. *See United States v. Long Cove Seafood, Inc.*, 582 F.2d 159 (2d Cir.); *Lyda v. United States*, 279 F.2d 461 (5th Cir.); *Edwards v. Bromberg*, 232 F.2d 107 (5th Cir.); *United States v. Handler*, 142 F.2d 351 (2d Cir.); *Crabb v. Zerbst*, 99 F.2d 562 (5th Cir.). Since the statute is not framed in terms of "larceny" and the term is not used, it should not be restricted to technical common law larceny by trick or

otherwise. This interpretation is consistent with the purpose of the statute. Drawing distinctions between larceny and false pretenses as is usually done on possession versus title is not helpful when neither term is used, and it does not further the congressional intent of protecting against theft crimes. The fact that Congress expressly chose the broad term "steal" is, of course, the most persuasive reason for finding the appellant's conduct falls within the purview of the statute. Thus we hold that the crime here charged is included in § 2113(b).

It goes without saying and without extensive citation of authority that the construction of elements in a criminal statute must be realistic and practical. The act must give the defendant adequate warning or notice that an act may give rise to a charge under the statute. Here the prohibition against stealing or purloining was in our view adequate. *See United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228.

The appellant Shoels also claims that he was deprived of a fair trial because he appeared before the jury dressed in a prison uniform. The trial was scheduled for June 4; however, due to a scheduling conflict the jury selection had to commence in the afternoon of June 3. The appellant's trial counsel moved for a delay in the proceedings to allow Mr. Shoels an opportunity to change from his prison clothes. The judge noted that Mr. Shoels wore Oklahoma state penitentiary clothes, which consisted of neat tan shoes, white trousers, a brown belt, and a light colored shirt that matched the trousers. The judge added that the jury would be unable to see the prison identification numbers on the front shirt or on the pockets on the trousers because the defendant would be sitting across the room. Thus the court ruled that the defendant was not prejudiced by his appearance in prison clothes and the jury selection proceeded.

In *Watt v. Page*, 452 F.2d 1174 (10th Cir.), *cert. denied*, 405 U.S. 1070, 92 S.Ct. 1520, 31 L.Ed.2d 803, this court held that a defendant is not inherently prejudiced by appearing before the jury in a prison uni-

form. The defendant must show beyond a reasonable doubt that his right to a fair trial is prejudiced. The trial court's findings as to the prejudicial effect of the prison clothes will not be set aside unless clearly erroneous. *Anderson v. Watt*, 475 F.2d 881 (10th Cir.).

Appellant Shoels' appearance was not prejudicial under the circumstances since he remained seated at the counsel table throughout the voir dire examination. The numbers on his clothing were not discernible. The trial court carefully scrutinized the situation, noting specifically that the appellant was neat, clean, and not noticeably garbed in prison clothing. Under the circumstances the voir dire examination did not infringe upon the defendant's presumption of innocence. Thus the trial court did not abuse its discretion in denying the appellant's motion for a continuance. *See United States v. Earley*, 482 F.2d 53 (10th Cir.).

The appellant also argues that the photographs of personal and courtesy checks were admitted in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and Federal Rule of Evidence 1004. The original checks were photographed at the F.B.I. laboratory in Washington, D. C. After the originals were returned to the F.B.I. agent his briefcase was stolen from his car. The court determined that there was no bad faith on the part of the government in not having the original checks available for examination by the defense. At trial the photographs of the checks and the photographs of the latent fingerprints found on the checks were admitted into evidence. The government's expert identified the latent fingerprints as those of the defendant.

■ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court ruled that the due process clause forbids the government from suppressing evidence favorable to the accused where the evidence is material to either guilt or punishment irrespective of the good or bad faith of the prosecution. Since there was no allegation or evidence of bad faith, we need only consider the materiality of the evidence and the prejudice to the defendant. *United States v. Wilks*, 629 F.2d 669 (10th Cir.). *See also United States v. Arra*, 630 F.2d 836 (1st Cir.). The standard for materiality in this situation is whether the omitted evidence creates a reasonable doubt that did not otherwise exist as to the defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; *Talamante v. Romero*, 620 F.2d 784 (10th Cir.).

■ Certainly the original checks and the fingerprints found on them were material to the determination of guilt. However, the government had photographed the checks and made all photographs and negatives available to the defendant. The defendant's attorney and expert were permitted complete access to the photographs. At trial the appellant could have presented his own expert comparisons of his fingerprints and the latent prints found on the checks. Thus we cannot hold that the defendant suffered any prejudice under these circumstances. *See United States v. Quintana*, 673 F.2d 296 (10th Cir.).

■ Federal Rule of Evidence 1004(1) provides that when original documents have been lost or destroyed secondary evidence is admissible if the proponent did not lose or destroy them in bad faith. The admission of such secondary evidence lies within the discretion of the trial court. *United States v. Mundt*, 508 F.2d 904 (10th Cir.). We cannot find that the trial court abused its discretion in admitting the photographs. Bad faith was not alleged or found. The government authenticated the photographs and laid a proper foundation. Thus the photographs were properly admitted.

The final claim is that the trial court's failure to exclude the pretrial photographic identification and the in-court identification of the defendant violated due process. On September 8, about two months after the incident, an F.B.I. agent went to the bank and presented a photographic display to Miss Eyster and Miss Perez. Both chose photograph No. 3, a picture of the defend-

ant, as the man presenting himself as Irving Butler. Earlier in August the agent had presented the same photographic display to two other bank employees and they chose photographs 5 and 6. At the trial Miss Perez made an in-court identification of defendant Shoels as the man presenting himself as Irving Butler.

 If the pretrial photographic array was impermissibly suggestive and the in-court identification by the witness unreliable, then the identification should be excluded. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *United States v. Herring*, 582 F.2d 535 (10th Cir.). But the record does not support the defendant's contentions that the photographic array was impermissibly suggestive. *United States v. Munn*, 507 F.2d 563 (10th Cir.). All seven photographs pictured black men in the same age group with similar complexions and facial features. The appellant contends that since the eyewitnesses described the accused as a black man without facial hair, it was suggestive and unconstitutional to present a display of men with facial hair. We cannot agree. According to the record, the display of photographs was of men with very similar features, and all the men photographed had noticeable but slight facial hair. The investigators presented the photographs one at a time to each witness separately and without comment. We must agree with the trial court's finding that the photographic procedure was fair and not suggestive.

The determination of eyewitness reliability requires consideration of the "totality of the circumstances." *United States v. Williams*, 605 F.2d 495 (10th Cir.). In *United States v. Herring*, 582 F.2d 535 (10th Cir.), we set out the considerations outlined by *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, for determining witness reliability. Here the witnesses meet the test. Both Miss Eyster and Miss Perez had the opportunity to view the man on July 3, the second day he appeared. They testified that it was unusual to service black customers in that particular branch

and that the transaction he sought was highly unusual. Thus there was great cause to call attention to the man presenting himself as Mr. Butler. Although two months transpired between the crime and the identification, it was not a substantial amount of time which would impede identification. Although Miss Perez did not give a prior description of the man she saw, she did identify the photograph of the appellant immediately and with certainty. Thus we find that the photographic display was without suggestion and the in-court identification was proper.

AFFIRMED.