UNITED STATES, Plaintiff-Appellee,

v.

Troy D. UPTHEGROVE et al.,
Defendants-Appellants.

No. 73-2185.

United States Court of Appeals,
Sixth Circuit.

Decided Oct. 18, 1974.

Stephen T. McMurtry, Covington, Ky., for defendants-appellants.

Eugene E. Siler, Jr., U. S. Atty., James E. Arehart, Lexington, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and McCREE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

A two-count indictment was returned by a federal grand jury in the Eastern District of Kentucky. Count I of the indictment charged appellants Upthegrove and Dunn with unlawful possession of a certain quantity of phencyclidine[1] in violation of 21 U.S.C. § 844(a).[2] Count II of the indictment charged the same appellants, Upthegrove and Dunn, and appellant Allen and one Michael W. Sturgeon with knowing and intentional possession of phencyclidine with the intent to distribute it, contrary to 21 U.S.C. §

---

1. Phencyclidine is a schedule III controlled substance within the meaning of 21 U.S.C. § 812. Phencyclidine was frequently referred to in the proceedings below as "angel dust".

2. 21 U.S.C. § 844(a) provides in part:
 It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice or except as otherwise authorized by this subchapter or subchapter II of this chapter.

841(a)(1).[3] Sturgeon was not tried, but in a joint trial of the others a district court jury in the Eastern District of Kentucky found them guilty as charged.

Appellants were halted in an automobile driven by Allen shortly after they had left an apartment building in Covington, Kentucky. A search without a warrant of the automobile and of the persons of Upthegrove and Dunn produced the controlled substances which were later introduced at the trial. Appellants' direct appeal challenges the validity of the warrantless search. In addition, Upthegrove and Dunn assert that they may not be convicted of both possession and possession with intent to distribute.

## THE SEARCH AND SEIZURE

The search and seizure issue was raised by a pretrial motion to suppress and an evidentiary hearing was held before District Judge Mac Swinford. The facts are neither complicated nor disputed.[4] On January 3, 1973 Officer Lawrence E. Handorf of the Office of Drug Abuse Law Enforcement received information from a reliable confidential informant about an expected "drug drop". The drop, or delivery, was to be made at approximately 1:00 p. m. the following day, by delivery at that time of between two and three ounces of "angel dust" (i. e., phencyclidine) to the third floor apartment of one Paul Hessling at 1409 Greenup Street in Covington, Kentucky. A controlled purchase of phencyclidine was made from Hessling's apartment during the early morning hours of January 4, 1973. On the

strength of the informer's information, the controlled purchase, and other evidence of frequent drug use at Hessling's apartment, a warrant to search the apartment was obtained and the apartment building was "staked-out" by approximately ten officers.

Officer Handorf knew that the delivery of phencyclidine would be made by automobile, but the confidential informer did not provide Handorf with any description of the automobile or the person or persons who would be making the delivery. Handorf also knew that the delivery would not be completed because the person in Hessling's apartment who was supposed to receive the phencyclidine was not there. Thus, Handorf expected that whoever arrived at the designated time would probably depart after a short stay in the building, still in possession of the phencyclidine.

Around 1 p. m. Handorf saw someone continually looking out the third floor window of the apartment building at 1409 Greenup. Shortly thereafter, a white Mercedes Benz, bearing Ohio license plates and driven by appellant Allen, arrived at 1409 Greenup. Appellant dropped Michael Sturgeon off in front of the building. Handorf stated that Sturgeon looked up to the third floor and made "either a gesture or something" and then entered the building. Appellant Allen drove his automobile around the block and then parked it in front of the apartment building. At this point, appellants Allen, Upthegrove, and Dunn alighted from the automobile and entered the building. While they were observed ascending the stairs from the first to the second floor, it was not

---

3. 21 U.S.C. § 841(a)(1) provides:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense, a controlled substance;

4. We have examined the testimony at trial as well as that adduced at the suppression hearing. Any pertinent evidence at trial with regard to the search and seizure of the phencyclidine is properly subject to consideration on review. See Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and DiBella v. United States, 369 U.S. 121, 129, 82 S.Ct. 654, 7 L. Ed.2d 614 (1969).

possible to observe them actually entering Hessling's apartment.[5]

Appellants and Michael Sturgeon stayed in the apartment building for about 15 or 20 minutes. Upon leaving the building they all got back into appellant Allen's automobile and proceeded toward the Ohio River which was about fourteen blocks away. Allen's automobile was stopped and searched by federal and state officers a few blocks from the apartment building. A plastic bag containing phencyclidine was removed from the automobile and given to Officer Handorf. At this point, Handorf arrested the appellants and searched them. Appellants Upthegrove and Dunn also had phencyclidine in their possession. All of this phencyclidine was introduced into evidence at trial.

Officer Handorf did not have any arrest warrants for the appellants, nor did he have a search warrant for appellant Allen's automobile. Handorf was questioned as to why he had not obtained a search warrant for the automobile and the following colloquy occurred:

Q. So all you knew was that there was going to be a delivery and you did not know the type of car or number of people, is that correct?

A. That's correct.

Q. What was the reason that you did not, after you saw this automobile and the people go in and come out, what was the reason you did not go and get a search warrant for that car at that time?

A. The time element involved and also we didn't think that we really had enough probable cause to put on paper. Yet we had enough probable cause and prudence to stop that car and check it. They had made a couple of what we considered overt acts.

Q. What overt acts were those?

A. Well, one, the correct time of day—our information was that the delivery would be made at 1:00 p. m. and they arrived at the immediate time of 1:20 p. m., they dropped off one person who turned around a couple of times, Michael Sturgeon, looked around, looked up to the third floor, made either a gesture or something to the third floor and then the car came around the block, parked and everyone alighted. We knew once they were in the house the sale wouldn't go down. They wouldn't stay in very long. They stayed about fifteen or twenty minutes, all of them got back in the car and headed back towards the Ohio River.

Upon the foregoing facts Judge Swinford overruled appellants' motion to suppress both the evidence seized from the automobile and that seized from the persons of Upthegrove and Dunn. We agree with this ruling because on the record before us probable cause existed for the search and exigent circumstances excused the failure to obtain a search warrant for the automobile.

We have no difficulty in finding that exigent circumstances existed within the meaning of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Indeed the identity of the automobile was not discovered until it drove up, and it was halted only minutes later as it drove away, headed in the direction of the Ohio River and another state. This was obviously a situation "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, *supra*, at 153, 45 S.Ct. at 285. The Carroll line of cases,[6] however, does not declare a field

---

5. Evidence at the suppression hearing established that the appellants actually entered Hessling's apartment, but this fact was not known by any of the officers on the stakeout.

6. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.

day for the police in searching automobiles, because "automobile or no automobile, there must be probable cause for the search". Almeida-Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973).

Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, *supra*, 267 U.S. at 162, 45 S.Ct. at 228. We recognize that "in dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).[7]

Appellants urge that while there may have been sufficient probable cause to support the search warrant which had been issued for the apartment, there was insufficient probable cause to support the search of the vehicle and persons of appellants, with or without a warrant. It is true that the stake-out of 1409 Greenup Street commenced with no description of either the automobile or the

person or persons who would be making the drug delivery. Were this the only evidence, and had the officers merely stopped and searched anyone who drove up to the apartment, we would agree. The knowledge which formed the basis for the probable cause for halting the departing automobile is to be measured, however, not at the time of the stake-out of the apartment, but rather at the time of the actual apprehension of the appellants. Viewed in this context and construing the evidence before the trial judge reasonably and in a light supportive of his finding,[8] we find that the additional observation and knowledge gained by Handorf, when added to that already in his possession, amounted to probable cause.

The missing element, a connection between appellants and the activities in the third floor apartment, was supplied by the observed conduct of the appellants after they arrived at 1409 Greenup. Appellants arrived at the apartment building at approximately the same time the informer said the drug drop would take place. The most critical element, however, in providing a link between appellants and Hessling's apartment was the conduct of Michael Sturgeon in making "gestures" to the third floor of the apartment building. Handorf had seen someone looking out of a third floor window. It is reasonable to infer that

---

1879 (1949); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Dyke v. Taylor Implement & Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L. Ed.2d 706 (1973); and Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); also see: Note, Warrantless Searches and Seizures of Automobiles, 87 Harv.L.Rev. 835 (1974).

7. Appellants emphasize Handorf's testimony, *supra*, that "we didn't think that we really

had enough probable cause to put on paper." While such testimony may be properly considered, it is hardly controlling. A police officer's subjective understanding of legal standards no more defeats a valid search than his good faith would excuse a defective one. The standard is primarily objective.

8. In overruling the motion Judge Swinford made only limited findings. Therefore, we take that view of the evidence which is reasonable and which supports his ruling. See e. g. United States v. Montos, 421 F.2d 215, Footnote 1 at 219 (5th Cir. 1970), cert. den. 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970), and Scarbeck v. United States, 115 U.S.App.D.C. 135, 317 F.2d 546, 562 (1972), cert. den. 374 U.S. 856, 83 S.Ct. 1897, 10 L. Ed.2d 1077 (1963).

there was some form of communication between Sturgeon and the occupant of that apartment. Sturgeon's entry into the apartment building was followed thereafter by that of the appellants. While Handorf could not see precisely where appellants went, he was able to ascertain that they went beyond the basement and first floor, further narrowing the possibilities and increasing the likelihood that they went to Hessling's apartment. Handorf's expectation that the appellants would not stay in the building very long was confirmed by their departure after 15 or 20 minutes. Further, we do not believe it was unreasonable if Officer Handorf took into account the make of the automobile, its license plates, the fact that it circled the block once before stopping and, finally, the fact that when the automobile departed, it was headed in the direction of the Ohio River, some 14 blocks away and hence out of Kentucky.

■ The foregoing facts show that probable cause existed thereby justifying the stop and search of appellant Allen's automobile. Immediately upon seizure of the phencyclidine from the automobile, the appellants were arrested and searched. Thus, the phencyclidine seized from the persons of Upthegrove and Dunn was obtained during the course of a valid search incident to a lawful arrest.[9] United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed. 2d 427 (1973). Accordingly, the trial judge properly denied appellants' motion to suppress.

### DOUBLE JEOPARDY

Appellants Upthegrove and Dunn further claim that under the facts in this case, they could not be convicted of both count I and count II because to do so amounts to "former jeopardy". This issue, however, does not assume constitutional dimensions, see Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L. Ed.2d 1405 (1958), but rather involves a question of whether their conviction of unlawful possession under count I merged with their conviction of possession with intent to distribute under count II.

Count I charges that on or about the day in question, appellants Upthegrove and Dunn "unlawfully, knowingly and intentionally possessed a certain quantity of phencyclidine, a controlled substance under Schedule III of Section 812, Title 21, United States Code, the said Troy D. Upthegrove and Gary L. Dunn not having obtained said substance directly from, or pursuant to a valid prescription or order by a practitioner, while said practitioner was acting in the course of his professional practice."

Count II charges that at the same time and place, appellants Upthegrove, Dunn and Allen (along with Michael Sturgeon) "knowingly and intentionally did possess with the intent to distribute a certain quantity of phecyclidine (sic) a controlled substance under Schedule III, Section 812, Title 21, United States Code."

A review of the complete record indicates that in all probability the grand jury in returning the two count indictment in this case used the individual packets and vials of phencyclidine found on the persons of Upthegrove and Dunn as a basis for charging them with unlawful possession of a controlled substance under count I and used the larger

---

9. It can be argued that the appellants were under arrest as soon as the automobile was stopped and, therefore, our inquiry should be whether there was probable cause to arrest the appellants without a warrant. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1958). Even if we view the facts in this manner, the result is still the same. Probable cause for a warrantless arrest exists if the facts and circumstances known to the arresting officer at the moment of the arrest would warrant a prudent man in believing that an offense has been or is being committed. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and United States v. Burch, 471 F.2d 1314 (6th Cir. 1973).

quantity of phencyclidine found in the automobile as a basis for charging all appellants with possession with intent to distribute under count II. If the indictment had been broken down in this manner and the government had proceeded on this basis during the trial with the court giving instructions appropriate thereto, then the convictions of Dunn and Upthegrove on both counts might be sustained. As the record stands, however, it is not possible to make such a distinction with regard to the different quantities of phencyclidine, because the case was neither presented in that manner, nor was the jury instructed to that effect.

Under the evidence as it developed at trial, and instructions as given by the court, the jury could have found that appellants Upthegrove and Dunn exercised no control over the phencyclidine found in the automobile, yet still convicted them of both counts based on the phencyclidine found in their possession. We are, therefore, compelled to consider whether possession of the same quantity of phencyclidine will support separate convictions of unlawful possession, 21 U.S.C. § 844(a), and possession with

intent to distribute, 21 U.S.C. § 841 (a)(1).

 This circuit in United States v. Wade, 502 F.2d 144, has recently held that unlawful possession of a controlled substance under Section 844(a) is a lesser offense included within a charge of possession with intent to distribute under Section 841(a).[10] Therefore, when the jury in this case found appellants guilty of the greater offense, possession with intent to distribute, their inquiry was at an end. See Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199, on reh. en banc 1227–1228 (1968), cert. den., 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). The lesser included offense of unlawful possession merged into the greater offense. Thus, Upthegrove's and Dunn's conviction and sentence under count I cannot stand.[11]

The judgment of conviction of Allen, Upthegrove and Dunn of count II is affirmed. The judgment of conviction of appellants Upthegrove and Dunn of count I is reversed and the case remanded to the district court with directions to vacate the conviction and sentences under that count and to dismiss it.

10. We are aware of this circuit's opinion in Hackett v. United States, 348 F.2d 883 (6th Cir. 1965), cert. den., 382 U.S. 1029, 86 S. Ct. 651, 15 L.Ed.2d 541 (1966), wherein it was stated that the offense of possession of narcotics did not merge with the offense of sale of the same narcotics. Hackett involved a construction of two statutes found under different titles of the United States Code. At the time Hackett was decided, Congress had devised several regulatory controls over narcotics which an offender could violate by a single transaction. In general, these anti-narcotic legislative provisions had different origins both in time and in design. Therefore, a single transaction could result in one or more offenses. See, e. g., Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). The statutes that are before us here, however, were created by the

Comprehensive Drug Abuse Prevention and Control Act of 1970. This Act was designed to provide an overall balanced scheme of criminal penalties for offenses involving drugs.

11. We are aware that when a defendant is convicted and sentenced under certain subsections of the Federal Bank Robbery Act, 18 U.S.C. § 2113, this circuit treats the sentences as merged and therefore vacates the sentences on the lesser offenses, but not the convictions. United States v. Fried, 436 F.2d 784, 786–787 (6th Cir. 1971); also see Prince v. United States, 352 U.S. 322, 77 S. Ct. 403, 1 L.Ed.2d 370 (1957). We view this "merger of sentences" approach as unique to the Federal Bank Robbery Act and thus decline to expand it to the situation here.