**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Allen BLANTON, Jr., Defendant-Appellant.**

No. 74–2113.

United States Court of Appeals, Sixth Circuit.

July 29, 1975.

James Allen Blanton, Jr., pro se.

H. Fred Hoefle, Cincinnati, Ohio (Court-appointed), for defendant-appellant.

Eugene E. Siler, Jr., U. S. Atty., James E. Arehart, Lexington, Ky., for plaintiff-appellee.

Before PECK, McCREE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

Appellant James Allen Blanton, Jr. was convicted by a jury in the District Court for the Eastern District of Kentucky, at Covington, of both counts of an indictment which charged him with willful possession of an unregistered semi-automatic rifle with a barrel of less than the statutory length, in violation of 26 U.S.C. §§ 5861(d) and 5871, and with unlawful possession of a .38 caliber revolver in violation of 18 U.S.C. App. § 1202(a)(1), Blanton having previously been convicted of armed robbery.

Blanton was arrested on August 22, 1973, just as he was about to enter a 1973 Ford Gran Torino parked across the street from The Pad, a bar in Covington. A search of the car, owned by Blanton's companion, Deborah Locke, produced the two weapons which led to Blanton's conviction.

Of the four issues raised by Blanton on his direct appeal, we reverse and remand for new trial on his claim that his right to a fair trial was violated by the deliberate injection by a government witness of inferences that Blanton was also involved in a recent armed robbery.

During the trial, a special agent of the Bureau of Alcohol, Tobacco and Firearms testified before the jury concerning Blanton's apprehension and the search of his companion's car.

On redirect examination, the following colloquy took place:

"Q  Mr. Howell asked you the reason you all were there was looking for guns, is that correct?  Did he ask you that?

A  I believe so, yes.

Q  Now, is that the only reason that you all were there, to look for guns, or for some other purpose?

A  Well, there were a few reasons. Mr. Blanton was under investigation for bank robbery and we were—and I was also assisting Agent Glossup with his investigation.  There was supposed to be $50,000.00 in bank robbery—

MR. HOWELL:  Objection.

THE COURT:  Objection sustained.

A  (continuing)—he was under investigation for bank robbery and we were coordinating the investigation together."

Later, in the direct examination of Special Agent Glossup of the FBI, the assistant United States Attorney questioned him as follows:

"Q  Did you have an occasion in August of 1973 to conduct an investigation of James Allen Blanton, Jr.?

A  Yes, sir.

Q  What was the purpose of the investigation?

A  In connection with a bank robbery.

MR. HOWELL:  Objection.

THE COURT:  Overruled."

■  Blanton did not testify at trial in his own defense.  The record of the suppression hearing held outside the presence of the jury shows that the officers were led to investigate Blanton on reports from an informer that Blanton had admitted involvement in a bank robbery and had $50,000 of the proceeds in the 1973 Gran Torino.  Outside of this hearsay evidence from an informer whose identity was never disclosed, there was no evidence whatever to indicate Blanton's involvement in a specific robbery, and indeed no evidence of the rob-

bery itself. The deliberate injection of testimony concerning another wholly unrelated offense in which Blanton was allegedly involved was error. *United States v. Perry*, 512 F.2d 805 (6th Cir. 1975); *United States v. O'Donnell*, 510 F.2d 1190 (6th Cir. 1975) (concurring opinion); *United States v. Calvert*, 498 F.2d 409 (6th Cir. 1974); *United States v. Nemeth*, 430 F.2d 704 (6th Cir. 1970); *United States v. Smith*, 403 F.2d 74 (6th Cir. 1968). We find it difficult to perceive how both the Assistant United States Attorney and the witnesses could not have understood the impropriety, and we find even more flagrant the conduct of the agent in the first cited instance who overrode not only the defense counsel's objections, but the trial judge's ruling itself to re-emphasize the objectionable evidence.

■ The government seeks to justify the questions on two grounds: (1) that defense counsel had invited the questioning by making repeated references to the number of agents who descended upon Blanton at the time of his apprehension and, (2) that the government was simply trying to amplify Agent Early's previous testimony that there were "several reasons why we were following Mr. Blanton." Our review of the testimony in its entirety shows that there was no justification for the line of inquiry pursued by the government.

■ The government claims further that the introduction of the evidence was harmless because the jury necessarily had before it the evidence of Blanton's 1960 felony conviction, an element of proof necessary to conviction on Count II, and because the proof of guilt was overwhelming. Both claims are without merit. It is one matter to present evidence of conviction of a felony thirteen years past, and quite another to infer that the accused had only recently engaged in similar conduct. Neither can we agree that the evidence of guilt was so overwhelming that the error could not possibly have influenced the jury's decision or affected the substantial rights of the defendant. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Hurst*, 510 F.2d 1035 (6th Cir. 1975); *United States v. Ortiz*, 507 F.2d 1224 (6th Cir. 1974). The car did not belong to Blanton, but to his girlfriend. His possession of the guns was constructive, and guilt thus depended upon the jury's believing that he knew of their presence in the car. The evidence of guilt was strong, it is true, but we cannot say the error was harmless. Thus, the judgment must be reversed and the case remanded for new trial.

Since the case must be remanded for retrial, we deem it appropriate to deal with appellant's other claims of error. Appellant contends that the search of the 1973 Gran Torino, made without warrant, and the seizure of the semi-automatic rifle and pistol found therein, were violative of Blanton's Fourth Amendment rights and thus the evidence obtained therefrom should have been suppressed.

At the suppression hearing James Mercer, a Covington police officer, testified that on August 16, 1973, he received word from a confidential informant that Blanton had approximately $50,000 in the trunk of his automobile. The informant stated that he had personally seen the money in the trunk and that Blanton had told him at the time that the money came "from a bank heist or a bank hold-up somewhere in the South". The automobile was supposed to have been in the approximate area of The Pad nightclub at 4th and Madison in Covington, Kentucky. Mercer passed this information on to Special Agent Glossup of the FBI on August 17, but the vehicle was not located.

Late in the evening of August 20, Mercer received information that the confidential informant had observed a "machine gun" in the trunk of the automobile Blanton was using at the time. The informant described the car as a beige 1973 Ford Gran Torino bearing Kentucky license plates, and said that he had observed the gun in the trunk again

while the car was around The Pad. Again Mercer relayed this information to Agent Glossup on August 21. Mercer's testimony at the suppression hearing indicated that he had dealt with the informant for several years and that the information he provided was generally accurate and reliable.

Special Agent Glossup testified that, in following up on the information he had received from Mercer, he had sent teletype inquiries throughout the South concerning any recent large bank robberies. A reply from Columbia, South Carolina indicated that a $147,000 bank robbery had occurred there on July 12, 1973, and that a Ford Torino had been used in the robbery. Glossup also received a teletype from the Cleveland Police Department reporting that Blanton had been seen driving the same automobile in the Cleveland, Ohio area on August 18th or 19th, but that while police were attempting to get a search warrant for the car, it had disappeared.

After receiving Mercer's phone call concerning the machine gun on August 20, federal agents on August 21 staked out The Pad looking for Blanton, but their surveillance failed. Agent Glossup testified that after the information concerning Blanton first reached him, he contacted Assistant United States Attorney DeFalaise who advised him that if time permitted and the car was not in a mobile state, he should try to get a "John Car warrant" before searching the car after it was located. If time did not permit, however, DeFalaise "felt it would be proper under the circumstances to conduct a Carroll rule search with the understanding that the car contained contraband or fruits of the crime".

Finally, at 6:22 p. m. on August 22nd, Glossup and another agent spotted the Ford parked in the driveway of a residence on Casino Avenue, later identified as the residence of Deborah Locke. Agent Mercer had previously checked the registration of the car, and found it registered to Miss Locke, although the address on the registration did not give Miss Locke's correct address. Shortly after spotting the car, Blanton and Miss Locke emerged from the residence and entered the car. Blanton was driving. The agents followed the Ford to a parking lot across from The Pad. Blanton and Miss Locke went into The Pad and remained there for approximately twenty minutes. According to Glossup:

". . . . . . . . . . . I was going to get them to obtain a John car warrant to have the car seized, but before I had the opportunity to even leave the area Mr. Blanton and the female exited the bar and proceeded toward the car."

At that point, the agents descended upon Blanton just as he was entering the car, took the keys from him, read him his constitutional rights, and proceeded to search the car. The search was conducted by FBI Agent John Barry, who testified that he had known Blanton personally for several years. The search produced the weapons and Blanton was then placed formally under arrest.

■ This court and the Supreme Court have often dealt with the lawfulness of warrantless searches and seizures of automobiles. Though reasonable warrantless searches are rare, probable cause that an automobile contains evidence or fruits of a crime plus "exigent circumstances" will justify the warrantless search of an automobile. *United States v. Beck*, 511 F.2d 997 (6th Cir. 1975).

In *United States v. Upthegrove*, 504 F.2d 682 (6th Cir. 1974), this court faced a somewhat similar problem of whether probable cause and exigent circumstances justified a warrantless search of an automobile. In that case, we noted that

Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *United States v. Upthegrove, supra*, at 686, citing *Carroll v. United*

*States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ The facts and circumstances known to the arresting officers on August 22, 1973, were sufficient to warrant a man of reasonable caution to believe that the car contained evidence or fruits of a crime. The arresting officers had information from a reliable source that the trunk of the car which Blanton had been driving contained a "machine gun", as well as money, possibly obtained in a robbery. They knew that Blanton had extensive use and present possession of the car in question and thus likely had constructive possession of the weapon. Finally, Agent Barry, the arresting officer, testified he had known Blanton personally for years, and thus he unquestionably knew of his past criminal record, since Blanton had been in prison from 1960 until 1972. We think that these facts gave the arresting officers probable cause to believe that Blanton, an ex-felon, possessed a firearm in violation of Title 18 § 1202(a) of the United States Code Appendix.

■ Admittedly, however, probable cause alone will not justify a warrantless search and seizure. *United States v. Beck, supra, United States v. Lewis,* 504 F.2d 92 (6th Cir. 1974). We turn then to the question of whether sufficiently "exigent" circumstances existed to justify the warrantless search where probable cause existed.

■■ The basic test for whether "exigent circumstances" exist, and thus a warrant becomes unnecessary to conduct a lawful search, is whether "it is not practicable to secure a warrant". *Carroll v. United States, supra,* 267 U.S. at 153, 45 S.Ct. at 285. Here there is no dispute that it was not practicable for the arresting officers to obtain a search warrant after they first saw the car in Covington on the evening of August 22nd. Only about twenty minutes elapsed between the time Blanton entered The Pad and the time when he attempted to leave in the car. In addition, there was reason to believe that

Blanton might be leaving the Covington area, since the car had been spotted in Cleveland only three days earlier. Finally, the officers had reason to believe that dangerous contraband was in the car and that stolen property might be contained therein. In these circumstances the opportunity to search the car was "fleeting", *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and the warrantless search was justified.

■ Blanton contends, however, that since the FBI knew a week in advance that the car could contain the stolen money or the illegal weapons, they should have obtained a search warrant prior to the time when they first saw the car on August 22nd. However, while spotted in Covington by the informer, the car's continued presence there had proved elusive and three days prior thereto it was seen in Cleveland. The situation here is thus unlike that in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Coolidge,* the police had known for several days the location of the car to be searched. In addition, they had no reason to believe that the car in question was going to be moved from the jurisdiction, and no reason to believe the car contained objects which were either stolen, contraband, or dangerous.

The preferable practice would have been for the agents here to have obtained a warrant when they decided to act on the information provided them. However, in the particular circumstances of this case, where the location of the car was so uncertain, we hold that agents were not required to obtain a search warrant, good for only a short period, on the chance that the car could be located within that period. Accordingly, we hold that the search was valid.

The two remaining grounds for appeal need only brief comment.

■ Blanton's claim that there was insufficient evidence to warrant sending the case to the jury is without merit. The principal basis for this claim is that the vehicle was owned by Deborah

Locke, not Blanton. This fact, as well as Miss Locke's testimony that others had access to the car goes to the weight but not the sufficiency of the evidence, which showed both use and control of the car by Blanton, sufficient to send the case to the jury.

Finally, appellant claims it was error for the trial judge, in resuming the trial after ruling on the motion to suppress, to state to the jury:

> "Members of the jury, at the time this witness was on the stand when you were excused from the courtroom, it was on the question of whether or not there was a lawful arrest or detention of the defendant by this witness at the time he went to the automobile and the Court has ruled that it was a lawful detention and lawful arrest."

Blanton urges that "The conclusion is inescapable that jurors, when told that appellant had been legally arrested, would conclude that if the court felt the arrest 'legal', that appellant had committed a crime that entitled the agents to make the arrest, and that therefore, he was guilty in the eyes of the Judge, and therefore, the law." We do not draw so sweeping a conclusion from the statement made, although we agree that such remarks to a jury are better left unsaid, being irrelevant to the issues they are to decide. Any misunderstanding could, we believe, easily have been cured by an appropriate instruction, but we note no such request was made by Blanton's counsel. In any event, the circumstance complained of is not likely to recur on retrial.

Reversed and remanded to the district court for a new trial.

McCREE, Circuit Judge (concurring).

I concur in the decision to reverse for the reasons stated in the majority opinion. I would also hold that the warrantless search of the vehicle was unlawful and would order the suppression of the evidence it yielded. I agree that probable cause existed to believe that the car contained contraband, but I find no exigent circumstances excusing obtaining a search warrant as the Cleveland police officers sought to do. *See Cardwell v. Lewis*, 417 U.S. 583, 596, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (Opinion of Stewart, J.).