**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tony FERONI, Defendant-Appellant.**

**No. 80–5243.**

United States Court of Appeals,
Sixth Circuit.

Argued April 17, 1981.

Decided and Filed July 28, 1981.

---

**708**

Harland E. Cohen, Court-appointed, Southfield, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Joseph Papelian, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before LIVELY, KENNEDY and MARTIN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Tony Feroni was indicted on an eighteen-count indictment alleging that he headed a scheme to pass counterfeit Liberty State Bank & Trust cashier checks. Following a trial in the Eastern District of Michigan, Feroni was convicted of the following offenses: conspiracy to transport in interstate commerce falsely made, forged, and counterfeit securities, 18 U.S.C. §§ 371 and 2314; interstate transportation of falsely made, forged and counterfeited securities, 18 U.S.C. §§ 2314 and 2(b); interstate transportation of stolen money, 18 U.S.C. §§ 2314 and 2(b); and bank larceny, 18 U.S.C. §§ 2113(b) and 2(b). He was sentenced to a total of fifteen years.

Feroni makes two contentions on appeal. First, he argues that his conduct did not constitute a violation of 18 U.S.C. § 2113(b).[1] He argues that the statute only proscribes actions which constitute common law larceny. Feroni asserts that his conduct lacked the trespassory taking element of larceny. The government agrees, conceding that appellant's scheme amounted to taking by false pretenses, but claims that § 2113(b) encompasses all felonious takings, including taking by false pretenses. The issue before us was expressly reserved in *United States v. Pruitt*, 446 F.2d 513 (6th Cir. 1971). We must decide whether § 2113(b) covers takings from a bank which do not constitute common law larceny.

We are not the first court to address this question. The circuits are split, and the positions have been well established. The

1. Section 2113(b) provides, in relevant part: Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both . . . .

government's argument for a broad construction of the words "Whoever takes and carries away, with intent to steal or purloin" finds support in the decisions of the Seventh, Second, and Fifth Circuits. *United States v. Guiffre*, 576 F.2d 126 (7th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978); *United States v. Fistel*, 460 F.2d 157 (2d Cir. 1972); *Thaggard v. United States*, 354 F.2d 735 (5th Cir. 1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966). Those decisions all rely on the Supreme Court's decision in *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). In *Turley*, the issue was whether the word "stolen" in the National Motor Vehicle Theft Act, commonly known as the Dyer Act, 18 U.S.C. § 2312,[2] is limited to takings which amount to common law larceny. The Court stated:

> We recognize that where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning. But "stolen" (or "stealing") has no accepted common-law meaning. On this point the Court of Appeals for the Fourth Circuit recently said:
>
> > "But while 'stolen' is constantly identified with larceny, the term was never at common law equated or exclusively dedicated to larceny. 'Steal' (originally 'stale') at first denoted in general usage taking through secrecy, as implied in 'stealth,' or through stratagem, according to the Oxford English Dictionary. Expanded through the years, it became the generic designation for dishonest acquisition, but it never lost its initial connotation. Nor in law is 'steal' or 'stolen' a word of art. Blackstone does not mention 'steal' in defining larceny —'the felonious taking and carrying away of the personal goods of another' —or in expounding its several elements. IV Commentaries 229 et seq." *Boone v. United States*, 235 F.2d 939, 940 (C.A. 4th Cir. 1956).

Webster's New International Dictionary (2d ed., 1953) likewise defines "stolen" as "Obtained or accomplished by theft, stealth, or craft . . . ." Black's Law Dictionary (4th ed., 1951) states that "steal" "may denote the criminal taking of personal property either by larceny, embezzlement, or false pretenses." Furthermore, "stolen" and "steal" have been used in federal criminal statutes, and the courts interpreting those words have declared that they do not have a necessary common-law meaning coterminous with larceny and exclusive of other theft crimes. Freed from a common-law meaning, we should give "stolen" the meaning consistent with the context in which it appears.

352 U.S. at 411–12, 77 S.Ct. at 399–400 (footnotes omitted). After examining the legislative history of the Dyer Act, the Court concluded that "the Act requires an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles." *Id.* at 417, 77 S.Ct. at 402.

Feroni's contention finds support in the decisions of the Ninth and Fourth Circuits. *LeMasters v. United States*, 378 F.2d 262 (9th Cir. 1967); *United States v. Rogers*, 289 F.2d 433 (4th Cir. 1961). Those courts have concluded that the words "steal" and "purloin" in section 2113(b), in the light of the legislative history, cannot be construed to cover the obtaining of money by false pretenses. *LeMasters, supra*, at 267; *Rogers, supra*, at 437. We believe that this reasoning follows the intent of Congress, to the extent that it can be determined, when the predecessor to § 2113(b) was enacted in 1937 as an amendment to the 1934 bank robbery statute.

---

2. The Dyer Act provides:

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000, or imprisoned not more than 5 years, or both.

The circuits which have endorsed a broad construction of § 2113(b) have miscalculated the effect of *Turley* on this question. *Turley* does not establish that the word "stolen"[3] in any federal criminal statute includes all felonious takings. The Court simply found that the word is unencumbered by common law meanings. The opinion explicitly states that the meaning of the word should be consistent with the context in which it appears, and further that it is appropriate to consider the purpose of the statute and to gain what light is available from the legislative history. 352 U.S. at 413, 77 S.Ct. at 400. It is clear that the Court contemplated that "stolen" could have different meanings in different statutes.

None of the circuits which purport to follow *Turley* by broadly construing § 2113(b) examines the legislative history of that enactment. Each of those decisions is nothing more than a mechanical application of *Turley*. They provide no discussion of why the context of § 2113(b) suggests that a broad interpretation of its provisions is appropriate. *Guiffre, supra*, at 128; *Fistel, supra*, at 162;[4] *Thaggard, supra*, at 737. In short, while those cases appear to apply the result of *Turley*, they fail to apply the analysis which *Turley* prescribes.

We agree with the Ninth and Fourth Circuits' conclusion that the legislative history of § 2113(b) supports a narrower construction of the statute. We can do no better than to quote from the thoughtful opinion of the Ninth Circuit:

The 1937 enactment of 18 U.S.Code § 2113(b) had a background and legislative history wholly different from those of the 1919 stolen motor vehicle act. We are aware of no background of evil at which Congress was pointing the statute except the evil of interstate operation of gangster bank robbers. As we have seen,

the Senate in 1934 passed a bill clearly and expressly creating several federal crimes against banks, including the crime of obtaining by false pretense. The House, and the Congress, rejected the bill, enacting only the robbery provisions. In 1937, without any further discussion of evil to be cured, Congress enacted § 2113 clearly covering robbery and burglary, and including § 2113(b), the provision containing the ambiguous words "steal" and "purloin." In construing the words we are obliged by the Turley case to give them a "meaning consistent with the context in which [they] appear." We think that that context, in the light of legislative history, requires that they be construed as not covering the obtaining of money by false pretenses. The words are used in conjunction with the words "takes and carries away," and these are the classic words used to define larceny. The words do not have a necessary common law meaning; rather, they are ambiguous. They are used in a statute, the purpose of which, as stated in its title, is ["To Amend the Bank-Robbery Statute to Include Burglary and Larceny"]. In such a case, the title is "a useful aid in resolving ambiguity." *FTC v. Mandel Brothers, Inc.*, 1959, 359 U.S. 385, 389, 79 S.Ct. 818, 822, 3 L.Ed.2d 893; *Maguire v. Commissioner*, 1941, 313 U.S. 1, 9, 61 S.Ct. 789, 85 L.Ed. 1149.

In the bank situation we see no reason, urgent or otherwise, why Congress in 1937 should have wanted to enter the field of obtaining by false pretenses, duplicating state law which was adequate and effectively enforced, and the duplication of which would bring innumerable cases, most of them small, within the jurisdiction of federal prosecutors and courts. Congress was as aware in 1937 as it was in 1934, when it rejected the unam-

---

3. We perceive no differences significant to this appeal between the words "stolen," "steal," and "purloin." *See LeMasters, supra*, at 266. We think it is clear, therefore, and no court has suggested otherwise, that the analysis employed by the Supreme Court in *Turley* is applicable in deciding the question before us.

4. The Second Circuit also relied on its earlier construction of the words "with intent to steal or purloin" as used in the National Stolen Property Act, 18 U.S.C. § 415 (1940 ed.), now 18 U.S.C. § 2314.

biguous provision making obtaining by false pretense from a bank of (*sic*) federal crime, that such an extension of federal law would serve no purpose except to confuse and dilute state responsibility for local crimes which were being adequately dealt with by state law. None of the reasons which persuaded the circuits and finally the Supreme Court to interpret broadly the word stolen in the motor vehicle act were present in 1937, when Congress wrote § 2113, or are present today.

If the oft cited canon of statutory construction that ambiguities in penal statutes are to be resolved in favor of the accused has any vitality, this is a plain case for its application.

378 F.2d at 267–8.

■ We realize that the legislative history of § 2113(b) is not dispositive of the question before us. However, we believe that the light it sheds on the question, together with the principle of strict construction of criminal statutes, compels a *narrow construction of the words "steal" and "purloin."* We hold that § 2113(b) does not proscribe the taking of money by false pretenses. Accordingly, Feroni's conviction for the violation of that provision must be reversed.

Feroni's second contention is that reversible error resulted from a prejudicial statement made by Robert Mullen, a government witness. Mullen was originally a co-defendant, and had pled guilty pursuant to a Rule 11 plea agreement. The cross-examination by defense counsel Cohen included the following interchange:

Q. [Cohen] What was the maximum term of imprisonment that you pled guilty to?

A. [Mullen] Five years.

Q. [Cohen] How many years were you facing as a possible sentence on the indictment?

A. [Mullen] Probably ten.

Q. [Cohen] When you say "probably ten" are you testifying from knowledge of the statute's maximum penalties or are you testifying from your own knowledge of what you thought your possible sentence would be?

\* \* \* \* \* \*

A. [Mullen] I understand the question. I tried to get a separate trial. I didn't want to walk into a courtroom with a three-time loser and end up in jail for twenty years. That's why I pled guilty.

App. at 280–81. Defense counsel immediately moved for a mistrial. The trial court denied the motion, but offered to instruct the jury at that point to disregard Mullen's reference to Feroni as a "three-time loser." Defense counsel declined the offer, fearing that such an instruction would only emphasize the prejudicial remark. Feroni contends that the trial judge committed plain error by failing to give the cautionary instruction, reversible in spite of defense counsel's request that the instruction not be given.

It is clear that Mullen's testimony was inadmissible[5] and prejudicial evidence of Feroni's prior criminal conduct. In *United States v. Ailstock, supra,* a government witness testified that the defendant had previously been in prison. Defense counsel immediately moved for a mistrial but did not request a cautionary instruction. The motion was denied and no such instruction was given. This court reversed Ailstock's conviction, holding that the failure of defense counsel to request an instruction did not excuse the District Court from its duty to give one. *Id.* at 1291. *See also United States v. Ortiz,* 507 F.2d 1224 (6th Cir. 1974).

*United States v. Poston,* 430 F.2d 706 (6th Cir. 1970), was another case in which inadmissible testimony of a prior conviction was received by the jury without any cautionary instruction. At the conclusion of all the

---

5. The government's after-the-fact argument that the statement was admissible is without merit. There has been no showing that Mullen's unresponsive answer was admissible for any of the purposes permitted by Federal Rule of Evidence 404(b). *See United States v. Ailstock,* 546 F.2d 1285, 1289 (6th Cir. 1976).

evidence the trial judge offered to give such an instruction in his general charge to the jury. Defense counsel declined, stating that the instruction would only emphasize the testimony and could not erase its effect. We reversed the conviction, stating that

"when during a jury trial evidence of the fact that at the time of the alleged offense for which the defendant is on trial he was on probation, and no corrective or cautionary instruction concerning that evidence is given to the jury, prejudicial error has intervened."

*Id.* at 709.

■ The above cases convince us that once Mullen's statement was made, the District Court had a duty to instruct the jury to disregard the prejudicial testimony. Had defense counsel neither objected to the testimony nor requested an immediate cautionary instruction, the court's failure to give such an instruction may have been reviewed on appeal as plain error under Federal Rule of Criminal Procedure 52(b). However, the trial court's obligation to instruct the jury ended when the court offered to give the cautionary instruction and defense counsel declined. The reasons for this are obvious. First, the general rule requires a defendant to object to the action of the trial court in order to preserve an alleged error for appellate review. Rule 51, Federal Rules of Criminal Procedure. *See United States v. Le Blanc*, 612 F.2d 1012 (6th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980). The trial court's failure to give an instruction was not challenged here; indeed, the court was complying with the express desire of defense counsel. Any error was therefore not preserved. The "plain error" exception to this rule applies only to certain egregious errors which "were not brought to the attention of the court." Rule 52(b), Federal Rules of Criminal Procedure. Because the

error alleged here was obviously brought to the attention of the trial court, it cannot constitute plain error within the meaning of the rule.

■ Second, the rule argued for by Feroni would impede the efforts of trial judges to preserve the impartiality of juries. If the failure to overrule defense counsel's request that no instruction be given can constitute reversible plain error, trial judges would be forced to give an instruction. This would compound the problem caused by the prejudicial evidence where, as in this case, defense counsel has decided that the instruction would do more harm than good. Moreover, this latter effect would in all likelihood be cited on appeal as a ground for reversal. In sum, the rule would permit a losing defendant to argue that a trial judge who recognized the prejudice and offered to cure it was wrong no matter what he did. The better rule is that a "trial judge can not be faulted for any trial mishaps that he offers to and could correct." *United States v. Splain*, 545 F.2d 1131, 1133 (8th Cir. 1976). *See also United States v. Levy*, 578 F.2d 896, 900 (2nd Cir. 1978); *United States v. Czarnecki*, 552 F.2d 698, 701 (6th Cir.), *cert. denied*, 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).[6]

This distinction rests in part on the assumption that even though defense counsel has rejected a cautionary instruction at the close of the evidence, he might well have accepted such an offer if it had been made immediately after the prejudicial testimony was given. As in *Poston*, the rejection of the offer at the close of the evidence is often based on counsel's decision that the benefits of an instruction are outweighed by the harm done in reminding the jury of the prejudicial remark. If offered an immediate instruction, however, counsel would be less likely to decline on this basis, since the prejudi-

---

**6.** Neither *Poston, supra*, nor *Ailstock, supra*, requires a contrary result. In *Poston*, the trial court did not offer to give an instruction concerning the prejudicial statement until after the close of all the evidence. Defense counsel's rejection of the offer precluded a finding that the court's failure to instruct the jury *at that*

*time* was plain error. Because no such offer was made immediately after the prejudicial testimony was given, Poston was not foreclosed from arguing that the court's failure to give an immediate cautionary instruction was plain error.

cial testimony is at that time still fresh in the minds of the jurors. Thus counsel should not be foreclosed from arguing that the court's failure to give an immediate instruction was plain error simply because counsel refused such an instruction later in the trial.

In *Ailstock* there was no indication that the trial judge offered to give a cautionary instruction. Like *Poston*, the case can only stand for the proposition that the failure to *offer* such an instruction, not the failure to give one once it is offered, can constitute plain error.

Feroni was entitled to argue in this appeal that no instruction could remedy the prejudicial impact of Mullen's statement, and that the trial court therefore erred when it denied the motion for a mistrial. If defense counsel had accepted the court's offer, Feroni could also argue, assuming the proper objection was made, that the curative instruction was inadequate. However, for the reasons set forth above, Feroni cannot claim that the failure to give an instruction was reversible error.

██ Even if the trial court's failure to give a curative instruction had been error, we hold that such error was harmless. It is clear that the error alleged is subject to the harmless error rule. *See Ailstock, supra*, at 1290; *United States v. Andrea*, 538 F.2d 1255, 1256 (6th Cir. 1976); *United States v. Hurst*, 510 F.2d 1035, 1037 (6th Cir. 1975); *United States v. Blanton*, 520 F.2d 907, 910 (6th Cir. 1975); *United States v. Ortiz, supra*, at 1226.

Several factors contribute to our decision that the prejudicial effect of Mullen's statement was too slight to warrant reversal of Feroni's conviction. The reference to appellant's prior convictions was inadvertent. *See Ailstock, supra*, at 1290. It was elicited not by the government, but by defense counsel on cross-examination. *Id. See also United States v. Blanton, supra*, at 910. More importantly, the effect of the remark on the jury, "the touchstone of prejudice," *Id.*, was greatly mitigated by other evidence properly admitted at trial. In ruling on the motion for a mistrial, the trial judge noted that a tape recording of a phone conversation had already been admitted into evidence. In that conversation, a person whom the government alleged was Feroni stated that he had been arrested 27 times. Defense counsel had declined the government's offer to have that statement stricken from the tape. He apparently reasoned that he could impeach the witnesses identifying Feroni's voice by showing that he had not been arrested 27 times. The trial court stated:

> If there had not already been some reference in this trial to possible previous trouble I would be sorely pressed to grant a mistrial because I think the fact the person is a three-time loser really carries with it the idea he has been convicted three times, or at least—but I think on balance in this case it's not so prejudicial that your client cannot have a fair trial.

App. at 284–85.

Finally, we find that there was overwhelming evidence of Feroni's guilt. The government presented abundant testimonial, documentary, and physical evidence that Feroni headed an elaborate scheme to pass counterfeit Liberty State Bank & Trust cashier checks. Our review of the record convinces us that the evidence of Feroni's guilt was so overwhelming that this prejudicial remark could not possibly have influenced the outcome or affected substantial rights of Feroni. *See Ortiz, supra*, at 1226.

To conclude, Feroni's conviction under § 2113(b) is reversed. The remainder of the judgment of the District Court is affirmed.