**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alberto Gonzales HERNANDEZ,**
**Defendant–Appellant.**

**No. 88–3749.**

United States Court of Appeals,
Sixth Circuit.

Argued March 30, 1989.
Decided April 28, 1989.

Gregory Lockhart, Office of the U.S. Atty., Gary Spartis (argued), Columbus, Ohio, for plaintiff-appellee.

Stephen E. Maher (argued), Columbus, Ohio, for defendant-appellant.

Before MARTIN, KRUPANSKY and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Defendant-appellant Alberto Gonzales Hernandez ("Hernandez") appeals his conviction after a jury trial of one count of selling cocaine in violation of 21 U.S.C. § 841(a)(1). For the reasons that follow, we affirm.

## I.

Hernandez was indicted on January 14, 1988, on two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). The United States voluntarily dismissed the second count of the indictment. On June 7, 1988, Hernandez was convicted on the remaining count and sentenced to ten years imprisonment and five years of probation upon release. He then filed a timely notice of appeal.

At trial, the government called three witnesses: Joseph T. Rector, a Columbus, Ohio, Police Department chemist; George R. Hahnert, a Columbus Police narcotics detective, and Julio Betancourt, a paid undercover informant. Hahnert testified that Hernandez was brought to his attention by Betancourt, who alleged he was selling cocaine. Hahnert then arranged to have Betancourt purchase cocaine from Hernandez.

On June 8, 1987, Hahnert observed Betancourt meet Hernandez in an alley and enter Hernandez's residence. Minutes later, Hahnert met Betancourt several blocks away from Hernandez's residence. Betancourt turned over a bag containing what chemist Rector determined to be approximately one ounce of cocaine. Betancourt told Hahnert that he purchased the cocaine from Hernandez for $1,400.00, with currency provided by the police.

Hernandez's defense counsel cross-examined Hahnert thoroughly about the details of his relationship with Betancourt, the compensation paid the informant and other, similar matters implicating Betancourt's credibility. On redirect examination, Hernandez's defense counsel objected when Hahnert was asked about Betancourt's reliability. After a brief hearing, the district court ruled that Hernandez's counsel had "opened the door" to the topic of Betancourt's reliability and it would allow the

government a limited opportunity to counter. Hahnert then testified that he had worked with Betancourt in approximately twenty-seven other cases and the informant had always provided reliable information. Hahnert testified that Betancourt's information had led to the seizure of a total of approximately fifteen pounds of cocaine in various cases, and the defendants had been convicted in every case in which Betancourt had testified.

Betancourt testified that he purchased the cocaine from Hernandez. In an unsolicited explanation of one of his responses, Betancourt testified he had not seen Hernandez since the night of the cocaine purchase because Hernandez was arrested in Florida soon thereafter. After a brief hearing, the district court admonished the jury that it was not to consider Betancourt's testimony of Hernandez's arrest.

On cross-examination, Betancourt acknowledged he knew Joaquin Carlos and Jesus Pastor. He acknowledged he knew Carlos was a convicted cocaine dealer. Later, Betancourt testified that his first work with the Columbus police was in helping secure Carlos' conviction, and he also testified in the trial in which Pastor was convicted of distributing cocaine.

This appeal presents the question of whether the district court abused its discretion in its admission of Betancourt's and Hahnert's testimony.

## II.

■ Hernandez's arguments rest on his trial counsel's objections raised below. Where objections are raised in a timely manner, our review is to determine whether the trial court clearly abused its discretion in its contested evidentiary rulings. *See United States v. Rios*, 842 F.2d 868, 872 (6th Cir.1988) (per curiam), *cert. denied,* — U.S. —, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). Trial courts have wide latitude in making evidentiary decisions and will not be reversed absent a clear showing of abuse. *See United States v. Mahar,* 801 F.2d 1477, 1495 (6th Cir.1986).

A.

■ Hernandez argues that error tainted his trial when the jury heard of his arrest in Florida. This argument focuses on the following exchange:

MR LOCKHART (ASSISTANT UNITED STATES ATTORNEY): Have you had any altercations or fights with the defendant in this case?

BETANCOURT: No, no.

LOCKHART: Have you seen the defendant in this case since last summer, 1987?

BETANCOURT: I didn't see him anymore because he was arrested in Florida.

LOCKHART: Have you been paid any money by the Columbus Police Department for your efforts in these investigations?

BETANCOURT: Yes.

LOCKHART: Were you paid that money prior to or after the investigation involving this defendant?

BETANCOURT: After the case.

LOCKHART: Do you have any reason, anything that has occurred between you and this defendant that would cause you to not be truthful regarding this defendant?

BETANCOURT: No, any reason.

J.A. 13–14.

Immediately following this exchange, the defense counsel asked that the jury be instructed to disregard Betancourt's statement about the arrest, or that the court declare a mistrial. The Assistant United States Attorney responded that he had not solicited the testimony and he did not know the circumstances of Hernandez's Florida arrest. The district court believed Betancourt's remark to be "just kind of a toss-in," but agreed to instruct the jury that it could not consider the testimony of Hernandez's arrest. After more discussion, the defense counsel stated: "I just renew the motion and the Court can handle it the way the Court wishes to handle it." Thereafter, the jury returned, and the court issued the following admonishment:

THE COURT: Ladies and gentlemen of the jury, Mr. Betancourt in his testimony alluded to the defendant having been ar-

rested in Florida. Let me strongly advise you that whatever that was about has nothing to do with this case. It may have related to the charge in this case. As you I am sure can understand, when an indictment is made there is an arrest pursuant to that and the plea of not guilty puts in issue all the issues in the case. The mere fact that there was an arrest, an indictment related to this or something else is not to be considered by you. Because Mr. Hernandez's plea of not guilty puts in issue each and every one of the elements of the case and the burden still remains on the government to prove those beyond a reasonable doubt.

J.A. at 20.

Hernandez now argues that Betancourt's testimony improperly influenced the jury with the idea that Hernandez was a multistate offender. Hernandez relies heavily upon *United States v. Blanton*, 520 F.2d 907 (6th Cir.1975), where the defendant was convicted of illegally possessing firearms. He was arrested as he was getting into his car, and police found the weapons when they searched the car. At trial, a police officer testified that Blanton was a bank robbery suspect, and the police had searched his car pursuant to an informant's tip that money from the robbery was hidden there. Blanton's attorney objected to this testimony, and his objection was sustained. The officer then restated his answer, mentioning again that Blanton was under investigation for bank robbery. An FBI agent also testified that Blanton was a suspect in a bank robbery. Blanton's attorney again objected; this time his objection was overruled. On appeal, this court held the government could not justify the line of questioning that elicited the flagrantly improper testimony, and "[t]he deliberate injection of testimony concerning another wholly unrelated offense in which Blanton was allegedly involved was error." *Id.* at 910.

*Blanton* does not support Hernandez's assertion that the district court's failure to issue harsher instructions or grant a new trial amounted to reversible error. The government's line of inquiry was reason-able and justified by the fact that Betancourt, as a paid informant, was subject to attack on cross-examination as a "professional witness." Moreover, there is no showing that the government acted in bad faith or otherwise "deliberately injected" Betancourt's stray remarks. The remarks themselves constituted a small portion of the evidence brought against Hernandez. Finally, the district court acknowledged Hernandez's objections and immediately admonished the jury in clear and forceful language. We conclude that Hernandez has failed to show an abuse of discretion in the district court's ruling on Betancourt's stray remarks. *See United States v. Bowers*, 739 F.2d 1050, 1055 (6th Cir.) (per curiam), *cert. denied*, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984).

### B.

Hernandez next argues it was erroneous for the district court to permit Detective Hahnert to testify on Betancourt's reliability and his aid in helping the government obtain convictions in other cases. But Hernandez's arguments here are undercut by the fact that his trial counsel admittedly "opened the door" to the issue of Betancourt's reliability and truthfulness. Federal Rule of Evidence 608(a) provides:

(a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

In speaking of "opening the door," the parties refer to Rule 608(a)(2), which allows a party to introduce evidence of the truthful character of its witness after an adversary has attacked the witness's credibility. The government asserts Hahnert's testimony was proper rebuttal to Hernandez's at-

tack on Betancourt's truthfulness, based on *United States v. Jones*, 763 F.2d 518 (2d Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985).

Critical to the resolution of this issue, however, is the fact that at the time Hahnert was questioned about Betancourt's truthfulness and reliability, the informant had yet to take the witness stand and testify himself. Because Betancourt was not a "witness," Rule 608 is inapplicable. As neither of the parties have addressed this subtle yet most important issue, our review is guided by the doctrine of plain error. Fed.R.Evid. 103(d). Plain errors are "those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty or public reputation of the trial." *United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). Appellate courts should resort to the plain error doctrine only in rare cases of exceptional circumstances. *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).

A review of the facts in this case and the development of the examination, cross-examination, and redirect examination of Hahnert convinces us that there was no plain error in allowing the government to question Hahnert as it did. We note that on cross-examination, Hernandez's attorney introduced the facts that Betancourt had worked with the Columbus police in approximately twenty-seven other cases, including Pastor's, and had helped secure Pastor's conviction by testifying against him. Moreover, the defense counsel helped develop the contested testimony by objecting on obfuscated grounds while simultaneously conceding that he had "opened the door" to it. We are aware of the potentially immense impact of evidence of an informant's "track record," and urge district courts to admit such testimony with extreme caution. In this case, we find the district court did not commit plain error in allowing the government to question Hahnert prematurely about Betancourt's truthfulness and credibility.

### C.

Hernandez's final complaint is that his trial was tainted by Betancourt's testimony regarding his relationships with Jesus Pastor and Joaquin Carlos. Hernandez's arguments here are meritless. He introduced the topics of Pastor and Carlos in his cross-examination of Betancourt, but now argues that Betancourt's responses to cross-examination and on redirect were irrelevant and unfairly prejudicial. He cites *Blanton*, without mentioning that *he*, and not the government, originally solicited the testimony regarding Pastor and Carlos.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.