993 F.2d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Michael MUNDA aka Michael Donald Moore aka Miami
Mike, Defendant-Appellant.
 No. 92-5588.
 United States Court of Appeals, Sixth Circuit.
 May 7, 1993.
 
 Before NORRIS and SILER, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the United States District Court for the Eastern District of Tennessee finding the defendant guilty on every count of an eight count indictment and sentencing him to three life sentences to be served concurrently and an additional forty-five years to be served consecutively.
 
 I. Facts:
 
 2
 Munda was prosecuted as the "super-kingpin" of a crack cocaine operation in several housing projects in Chattanooga, Tennessee. On February 12, 1991, the grand jury returned a six-count indictment charging Munda with the following: Count 1--conspiracy to distribute crack cocaine (21 U.S.C. §§ 841(a)(1) and 846); Count 2--aiding and abetting Clifford Chambliss and Wendell Jones in the possession of crack (21 U.S.C. § 841(a)(1)); Count 3--aiding and abetting Clifford Chambliss in carrying a firearm during and in relation to a drug trafficking offense (18 U.S.C. § 924(c)); Count 4--aiding and abetting Wendell Jones in the possession of a firearm during and in relation to a drug trafficking offense (18 U.S.C. § 924(c)); Count 5--aiding and abetting Richard Harding in the possession of crack (21 U.S.C. § 841(a)(1)); and Count 6--aiding and abetting Richard Harding in the possession of a firearm during and in relation to a drug trafficking offense (18 U.S.C. § 924(c)).
 
 
 3
 On April 29, 1991, Munda entered a guilty plea to Counts 2 and 3. On July 15, 1991, Munda filed a motion to withdraw his guilty plea and to set the case for trial. On November 1, 1991, a superseding indictment was returned which included two additional counts: Count 7--engaging in a continuing criminal enterprise [CCE] (21 U.S.C. § 848(b)); and Count 8--carrying a firearm during and in relation to a drug trafficking offense (18 U.S.C. § 924(c)).
 
 II. Discussion:
 
 4
 Appellant Munda advances eleven issues on appeal. However, this Circuit has previously squarely addressed and rejected arguments identical to those raised in sections 2(B), 2(D), 3, 4, 6 and 9 of appellant's brief. Therefore, in light of Salmi v. Secretary of Health and Human Services, 774 F.2d 685, 689 (6th Cir.1985), which held that "[a] panel of this Court cannot overrule the decision of another panel," these contentions will be denied without further analysis.
 
 
 5
 1. Denial of Motion For A Mistrial.
 
 
 6
 Richard Harding, a key government witness, testified that Munda had previously served time in prison at Ft. Leavenworth.
 
 
 7
 The government asked: "Do you know anywhere else that he was stationed or did he ever tell you?" Harding answered: "He spoke to me about being up in prison in, wherever, I think it's Levenworth [sic], I'm not sure."
 
 
 8
 The defense immediately objected as unresponsive and the trial judge sustained. Counsel for both parties approached the bench and the defense requested a mistrial which the judge denied. The jury was instructed to disregard the statement.
 
 
 9
 Appellant Munda claims that the district judge's denial of the mistrial was an abuse of discretion and relies on two Sixth Circuit cases, United States v. Poston, 430 F.2d 706 (6th Cir.1970), and United States v. Ailstock, 546 F.2d 1285 (6th Cir.1976), where mistrials were proper due to witnesses' prejudicial statements. The United States distinguishes Poston and Ailstock by pointing out that no curative instruction was given in either case. Here, however, the district court fully explained to the jury that the testimony must be disregarded and could not be considered in their deliberations.[1]
 
 
 10
 This Circuit has considered several factors when determining whether particular testimony was prejudicial. United States v. Blakeney, 942 F.2d 1001, 1030 (6th Cir.1991), cert. denied, 112 S.Ct. 646 (1991), recognized the importance of curative instructions in preventing prejudice. Also important is whether the prejudicial statement was an isolated incident or comprised a significant part of the testimony. United States v. Bowers, 739 F.2d 1050, 1055 (6th Cir.), cert. denied, 469 U.S. 861 (1984). Further, whether the government acted in bad faith or deliberately injected the comment is also relevant. See United States v. Hernandez, 873 F.2d 925, 928 (6th Cir.1989).
 
 
 11
 Considering that it was only one statement, never mentioned again by either party, unsolicited, and cured by fully instructing the jury, there seems to be little, if any, prejudice. Therefore, the district court did not abuse its discretion in refusing to grant a mistrial.
 
 
 12
 2. Motion For Judgment of Acquittal.
 
 
 13
 Munda advances two arguments for the proposition that the evidence was insufficient to support the jury's verdict. The district court denied the appellant's motion which was made both at the close of the government's case and at the close of all the evidence. In reviewing the denial of a motion for judgment of acquittal, this Court must consider all of the evidence in the light most favorable to the government and determine if there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt. United States v. Walton, 908 F.2d 1289, 1294 (6th Cir.), cert. denied, 498 U.S. 906 (1990).
 
 
 14
 A. Sufficiency of the Evidence on Count 8.
 
 
 15
 Appellant's first argument involves the sufficiency of the evidence supporting Count 8 which charged Munda with carrying a firearm during and in relation to the continuing criminal enterprise charged in Count 7. Count 8 involves the incident on March 14, 1989, where a police officer heard gunfire in an alley and saw an individual standing with a gun. The officer identified himself and asked the man, later identified as Munda, to drop the gun. Instead, Munda went inside the apartment and returned without the weapon. The officer approached the porch, detained Munda, and asked a female who came from inside the apartment to bring him the gun. Munda argues that there was nothing to indicate that his use of the firearm was "during or in relation to a drug trafficking offense" as required for a conviction under § 924(c).
 
 
 16
 This Circuit's cases interpret "during and in relation to" to encompass weapons which were in the defendant's actual or constructive custody and were kept ready to use to protect a safe house. United States v. Head, 927 F.2d 1361 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991); United States v. Brown, 915 F.2d 219 (6th Cir.1990). Testimony at trial revealed that the apartment itself was used as a central operating location for the continuing criminal enterprise and that Munda was brandishing and firing a high-powered handgun while overlooking the drug distribution activity in the alley.
 
 
 17
 Despite the fact that the original arrest was for loitering, the government presented overwhelming proof of Munda's use of the firearm to protect the crack in the safe house. Considering the highly deferential standard of review and this Circuit's prior interpretations of "during and in relation to," the conclusion on Count 8 should not be disturbed.
 
 
 18
 B. The Sufficiency of Evidence to Support the Enhanced Penalty Provision of 21 U.S.C. § 848(b).
 
 
 19
 Appellant argues that the quantity of drugs proven does not satisfy the requisite quantities for the enhanced punishment provision of the CCE statute because the government's only proof was the uncorroborated testimony of Richard Harding.
 
 
 20
 The United States points out that to meet the quantity requirement at least 1.5 kilograms of crack cocaine (crack) must be involved. Harding testified that between 15 and 20 kilograms of crack were distributed during the relevant time period, December 1987 to January 23, 1990. His estimate was based on the fact that their supply was renewed every two to three weeks with 1 to 2 kilograms of crack each time. The government supports this estimation by calculations of its own and other witnesses' testimony. The evidence established that Munda's organization was able to distribute between four and eight bags of crack a night. Each $500.00 bag weighed about eight grams. By multiplying the amount of crack in each bag by the minimum number of bags sold six days a week over a two year period, the total comes very close to Harding's estimation.
 
 
 21
 Considering the breadth of Munda's operation, the length of time covered by the indictment, and the mathematical computations which are supported by the testimony of several witnesses, the district court correctly applied the enhanced punishment provision.
 
 
 22
 3. Appellant's Request For a Bill of Particulars.
 
 
 23
 The indictment covered Munda's alleged activity from December 1987 to January 23, 1990, and Munda argues that this lengthy time period prevented him from preparing an adequate defense without a bill of particulars.
 
 
 24
 The United States responds with United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991), which holds that granting or denying a bill of particulars is within the sound discretion of the trial court and should be disturbed only when there is actual surprise at trial and prejudice to the defendant's substantial rights by denial.
 
 
 25
 Munda has not claimed or proven actual prejudice by the denial. Further, although the indictment covers a long period of time, several of the counts specified the individuals involved and provided the defendant with details of three specific predicate acts. Without a showing as to how his defense suffered--other than the bare claim that defending charges concerning an extensive time-span is difficult--the district court's ruling was not error.
 
 
 26
 4. The CCE is Cruel and Unusual Punishment.
 
 
 27
 Munda says that life in prison without parole is cruel and unusual punishment and violative of the Eighth Amendment because it is disproportionate to the crimes of which he was convicted.
 
 
 28
 The United States argues that a conviction under § 848(b), the "super-kingpin" statute, imposes life in prison without parole because of the seriousness of the offense. This Circuit has upheld the statutory scheme against constitutional challenges, including ones based on the Eighth Amendment. United States v. McCann, 835 F.2d 1184, 1187-90 (6th Cir.1987), cert. denied, 486 U.S. 1026 (1988). Similarly, the Supreme Court, in Harmelin v. Michigan, 111 S.Ct. 2680 (1991), addressed a nonparolable life term for a first time offender who was convicted of possessing 672 grams of cocaine, holding that a life sentence without parole is not cruel and unusual punishment when a person is convicted of a drug crime of such magnitude.
 
 
 29
 Given the seriousness of the crimes that Munda was convicted of and the cases addressing the issue, the punishment for the CCE conviction is not violative of the Eighth Amendment.
 
 
 30
 5. The Aliases in the Indictment.
 
 
 31
 The indictment was styled Donald Michael Munda, a/k/a Michael Donald Moore, a/k/a Miami Mike. The appellant argues that the district court's refusal to strike the aliases from the indictment was unduly prejudicial.
 
 
 32
 This Circuit, in United States v. Wilkerson, 456 F.2d 57, 59 (6th Cir.), cert. denied, 408 U.S. 926 (1972), held that including aliases in indictments should be curbed except when proof of an alias is relevant to identifying the defendant. Further, the court in Wilkerson found that the admission of aliases was not prejudicial error, due to other evidence of guilt, despite the fact that the defendant's use of aliases was never even substantiated. Id. See also United States v. Rastelli, 653 F.Supp. 1034, 1055 (E.D.N.Y.1986) (aliases should be stricken when they are surplusage, used to inflame the jury, and not relevant to the crimes charged).
 
 
 33
 The government established that Munda's aliases were needed here to properly identify the defendant. For example, Munda used Michael Donald Moore when he was arrested and when he laundered money. However, people distributing drugs for him frequently referred to him as Miami Mike. Since Munda's aliases were established through testimony and evidence and were not used merely to inflame the jury, they were properly part of the indictment.
 
 
 34
 6. The Consecutive Running of the Sentences.
 
 
 35
 The district court sentenced Munda to a total of forty-five years on the § 924(c) counts, five years on Count 3, twenty years on Counts 4 and 8 concurrent with each other (the court merged the conspiracy in Counts 1 and 7 and therefore merged the gun charges in Counts 4 and 8), and twenty years on Count 6. Appellant urges that the court should not have run these sentences consecutive to his life sentence for Count 7, the CCE violation. Munda argues that all of the § 924(c) violations, the gun charges, should merge into the CCE conviction because the facts used to prove Count 7, CCE, were the same facts used to prove the predicate acts required for the § 924(c) violations. Munda claims that this presents a multiplicity problem which subjects him to double jeopardy.
 
 
 36
 Munda's argument that his sentences for the § 924(c) convictions cannot run consecutively to his sentence for the CCE conviction because they are based on the same predicate acts is unavailing. Munda was convicted on Counts 2 and 5 for aiding and abetting others in the possession of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Arguably, the predicate acts for the CCE charge could potentially be the crimes in Counts 2 and 5 of the indictment which were the predicate acts for the § 924(c) charges. However, drug convictions under 21 U.S.C. § 841(a)(1) are not lesser included offenses of the CCE violation, even if the CCE count lists those counts as predicate offenses. United States v. English, 925 F.2d 154, 159 (6th Cir.) (citing Garrett v. United States, 471 U.S. 773 (1985)), cert. denied, 111 S.Ct. 2810 (1991). Further, this Court already rejected the appellant's argument that the only predicate acts on which the jury could rely were those charged in the indictment.
 
 
 37
 This Circuit recently addressed a similar issue in United States v. Johnson, 986 F.2d 134 (6th Cir.1993). There the defendant argued that the evidence the government had to produce to obtain convictions on Counts 2 and 4, both gun charges, was identical. Johnson clarified the law for multiple § 924(c) charges: "[T]he use of a single firearm can support multiple § 924(c) convictions, as long as each § 924(c) count requires proof of a distinct predicate offense." Id. at 137. Like the defendant in Johnson, Munda was charged with two distinctly different kinds of conduct which in this instance amounted to separate violations under both § 924(c) and the CCE statute.
 
 
 38
 Unlike the defendant in Johnson, Munda does not argue that the various gun charges are duplicative, but that the gun charges and the CCE charge involve the same proof, and therefore should either merge or have sentences which run concurrently. However, based on this Court's holding in English, and the premise set forth in Johnson that convictions for separate acts do not warrant a double jeopardy bar, the district court should be upheld.
 
 
 39
 7. Motion to Dismiss for Vindictive Prosecution.
 
 
 40
 Munda argues vindictive prosecution because after he withdrew his initial plea and exercised his right to a jury trial, the prosecution filed a superseding indictment which added Counts 7 (CCE) and 8 (§ 924(c)) despite no development of new facts or circumstances. The appellant relies on cases such an North Carolina v. Pearce, 395 U.S. 711 (1969), and Blackledge v. Perry, 417 U.S. 21 (1974), where the Court held that vindictiveness could be presumed if the defendant successfully appeals his conviction and the prosecutor reindicts on more severe charges.
 
 
 41
 The United States cites several Supreme Court cases which support a convincing distinction between pre-trial and post-trial vindictiveness. The most convincing is Bordenkircher v. Hayes, 434 U.S. 357 (1978), where the Supreme Court rejected the defendant's argument that vindictiveness should be presumed in the pre-trial context when the prosecutor threatened to file more serious charges if the defendant did not enter a guilty plea. The Court distinguished plea negotiations where the parties "... possess relatively equal bargaining power...." Similarly, United States v. Goodwin, 457 U.S. 368 (1982), in reversing a decision adopting arguments similar to those presented by Munda, held that a prosecutor should be allowed broad discretion before trial to determine the social interest in prosecution.
 
 
 42
 Interpreting Supreme Court precedent in light of the pre-trial/post-trial vindictiveness distinctions, the prosecutorial vindictiveness claim in this instance lacks merit.
 
 III. Conclusion:
 
 43
 For the foregoing reasons, the appellant's conviction and sentence are AFFIRMED in all respects.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The district court gave the jury the following instructions:
 Ladies and gentlemen of the jury, you have heard some testimony from this witness regarding what he just testified to regarding a possible time that the Defendant spent in prison or something. That is not anything that you should consider in this case. It should not be considered by you at all. You are to disregard that in making any decision in this case.
 I told you at the outset of trial that some things are not evidence, and among the things that are not evidence are those things I tell you to disregard. So, that's not evidence, and you may not consider that in reaching your decision in this case. All right.